**Donald Lee RAY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–700.**

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1988.

Lee Ann Jones Peters, Chief of Appellate Div., Oklahoma County Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Donald Lee Ray, appellant, was tried by jury and convicted of First Degree Rape [21 O.S.Supp.1983, § 1114], After Former Conviction of Two or More Felonies [21 O.S.1981, § 51(B)], in Case No. CRF–85–551, in the District Court of Oklahoma County, the Honorable Joe Cannon, District Judge, presiding. The jury set punishment at thirty (30) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On January 4, 1985, sixteen-year-old L.S. walked from her house to a neighborhood store about 9:30 p.m. to telephone her boyfriend. After completing the call, L.S. walked back home. Someone from inside a parked pickup called to her. She ignored the person and, as she walked up her driveway, the truck pulled behind her. A man grabbed L.S. from behind, put his hand over her mouth, and threw her into the truck. L.S. recognized her attacker as the appellant, an older brother of one of her high school classmates. Appellant drove a few blocks to his brother's house, where he borrowed $3.00 from his sister-in-law, and then drove in the direction of L.S.'s house. Rather than take L.S. home, however, appellant drove to First and Durland in Oklahoma City, an urban renewal area where the homes have been either demolished or abandoned.

L.S. tried to escape and opened the passenger door. Appellant told her, "[i]f you don't close that mother-f—king door, then I'm going to kill you," and demanded that L.S. pull down her pants. She refused. According to L.S., appellant reached into his pocket and said, "take down your pants because I'm going to f—k you to death. So I took down my pants halfway. And then he said, pull them all the way down. And I said, no. And he said, if you don't pull them all the way down, he said he was going to kick my butt. So I pulled them all the way down and put one leg out and that's when he laid me down in the seat and that's when he got on me." [Tr. at 90–91] "I kept telling him to get off of me and I was trying to push him off of me, but he wouldn't get off." [Tr. at 96] "He said he didn't come in me; that he caught it on the white towel." [Tr. at 98] "He ... asked me was I going to tell anybody. And I said, no, because I was scared. And then he said, well, anyway, if you did tell somebody that I can tell them that you've been with a white man.... He was saying, promise me you won't tell my lady? And I said, I don't know her. And he said the police won't take me to jail no way because I've got a baby and a wife." Appellant offered L.S. money for what he did to her and for not telling the police. L.S. refused the money. [Tr. at 102] Appellant then took L.S. home. She was crying as she entered the front door and holding her hands between her thighs. L.S. told her mother and a friend that appellant had raped her.

Appellant raised the affirmative defense of consent. When arrested later that evening, appellant told the arresting officer, after being given a *Miranda* warning, that he had earlier been with a local prostitute who he did not know by name but only by her nickname of the "green-eyed whore". L.S. has brown eyes, not green eyes. Appellant stated he solicited sex from the prostitute and promised to pay her, but when she discovered he did not have any money, she got angry and that was why she called the police and accused him of rape. Four days after appellant's arrest, he talked to a sex crime investigator in the city jail after being given *Miranda* warnings. This time he identified L.S. by name, and stated that he offered her $25.00 to have sex with him. L.S. accepted the offer. After about thirty seconds of sexual intercourse, appellant claimed L.S. demanded her money and, when he told her he did not have the money, she became very angry and pushed him off before he could ejaculate. The following day, the investigator questioned appellant again and asked if he wanted to change his story about not ejaculating. Appellant affirmed he did not eja-

culate. The rape kit prepared on L.S. at the hospital revealed the presence of semen in her vagina and on her thigh. Additionally, the State chemist found the presence of semen on L.S.'s pants and in the crotch of her panties. The chemist also found semen on the armrest and on a white towel in appellant's truck. The chemist further found semen on appellant's pants.

Appellant's sister testified she telephoned L.S. after her brother was arrested, at which time L.S. told her "he didn't have no business, Kathy, telling me he had $25 when he didn't." [Tr. at 419] However, the sister failed to report this alleged conversation with L.S. to either the police or her parents until a few days before appellant's trial some three months later.

For his first assignment of error, appellant asserts the trial court erred by overruling his demurrer because the prosecutrix's testimony was inconsistent, contradictory and uncorroborated.

"A demurrer to the evidence is a motion for a directed verdict which admits for the sake of argument the facts which the State's evidence tends to prove. If there is any competent evidence reasonably supporting the allegations for the charge, the demurrer should be overruled." *Strube v. State*, 739 P.2d 1013, 1017 (Okla.Crim.App. 1987). We find the trial court properly refused to sustain appellant's demurrer.

A conviction for rape may be sustained upon the uncorroborated testimony of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief. If the record reveals the testimony of the prosecutrix is clear and believable and is not inconsistent, incredible or contradictory, we will not interfere with the jury's verdict. *Beshears v. State*, 738 P.2d 1375, 1377 (Okla.Crim.App.1987). Here, the record reveals the testimony of the prosecutrix was lucid, clear and devoid of ambiguity. *Id.* Her memory and veracity were thoroughly tested on cross-examination. *Id.* Her testimony was not inconsistent, incredible or contradictory. *Id.* Moreover, the forensic evidence confirming ejaculation, despite appellant's contention to the contrary, corroborated L.S.'s testimony, as did her demeanor immediately after the attack. The inconsistencies in L.S.'s testimony, such as whether appellant and L.S. did or did not stop for gas, or whether L.S. did or did not drive the truck part of the way, arose from conflicts between the prosecutrix's testimony and appellant's statements to the police, and did not refer to the act of sexual intercourse but rather to related events. *McDaniel v. State*, 509 P.2d 675, 679 (Okla.Crim.App.1973). This assignment of error is without merit.

For his second assignment of error, appellant asserts the trial court erred by refusing to give his requested instruction on corroboration derived from OUJI–CR 841. The Uniform Jury Instructions were adopted in 1981. Prior to the adoption of OUJI–CR 841, we found no error in refusing to issue a similar instruction when the prosecutrix's testimony is corroborated and is not unbelievable. *Costilla v. State*, 609 P.2d 788, 791 (Okla.Crim.App.1980). We followed *Costilla* in *Capps v. State*, 674 P.2d 554, 556–57 (Okla.Crim.App.1984). Inasmuch as we earlier found the prosecutrix's testimony in this case to be corroborated and found her testimony not inconsistent, uncertain, or contradictory, and *Costilla* was controlling at the time the trial judge refused to issue OUJI–CR 841, we find the trial court did not err by refusing to issue appellant's requested instruction to the jury.

For his third assignment of error, appellant asserts the trial court erred by refusing to issue his requested instructions on consent and that the State has the burden of proving beyond a reasonable doubt that the sexual intercourse was not consensual. Appellant relies on *Broaddrick v. State*, 706 P.2d 534, 536 (Okla.Crim.App. 1985), in which we found that "the defendant is entitled, as a matter of law, to have the jury instructed on the law governing his theory of the case if it finds possible support in the evidence."

The trial court instructed the jury that the State has the burden of proving beyond a reasonable doubt that the prose-

cutrix resisted the appellant's advances to the extent of her ability until she was overcome by force or threats. The instruction fully incorporated appellant's theory of defense. *Green v. State*, 611 P.2d 262, 266, n. 3 (Okla.Crim.App.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). Moreover, the instructions to be given to the jury are left to the trial court's discretion, and we will not interfere with the court's judgment as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Id.*, at 266. We find no abuse of discretion. This assignment of error is without merit.

■ For his fourth assignment of error, appellant asserts the trial court erred by refusing to permit him to cross-examine L.S. on her previous sexual experiences, since the prosecutor opened the door to cross-examination on this issue during his direct examination of Officer Jackie Harris. Appellant relies on 22 O.S.1981, § 750(B), and raises a question of first impression.

Title 22 O.S.1981, § 750(B) provides:

If the prosecutor introduces evidence or testimony relating to the complaining witness' sexual *conduct,* the defendant may cross-examine *the witness giving such testimony* and offer relevant evidence or testimony limited specifically to the rebuttal of such evidence or testimony introduced by the prosecutor. (emphasis added)

On direct examination by the prosecutor, Officer Harris testified:

Q. Were you able to interview her and ask her questions and receive answers from her?

A. Yes, Sir.

Q. And did she describe for you what happened to her that night?

A. She attempted to. I got the impression from talking to her that she did not have any sort of previous sexual experience because I had to be specific with her to get her to describe some of the certain acts. She didn't know the terminology.

Q. Could you tell the Court and the jury what you mean by that, what you were asking her that she didn't understand?

A. When I was trying to determine from her the types of intercourse that she had engaged in, I used some street terms, and she wasn't sure what I was talking about. I had to describe to her as in asking her the questions, you know, specific things that had happened. [Tr. at 194–95]

Appellant's reliance on Section 750(B) is misplaced for two reasons. First, Officer Harris testified to L.S.'s sexual illiteracy, not to her previous sexual *conduct* as required by statute. Second, the statute permits cross-examination *of the witness giving such testimony*, which in the instant case was Officer Harris, not the prosecutrix. Here, appellant cross-examined Officer Harris but never attempted to question her concerning L.S.'s previous sexual conduct. We find the State did not open the door to cross-examination or rebuttal on the issue of the prosecutrix's past sexual conduct. Even assuming the State had opened the door, that would not have conferred on appellant the right to cross-examine L.S., but only the right to cross-examine Officer Harris, the witness giving the testimony. This assignment of error is without merit.

For his fifth and final assignment of error, appellant asserts that comments made by the prosecutor in closing argument deprived him of a fair trial. Most of the comments complained of were fair comments on the evidence. We find no comments by the prosecutor which adversely affected the fundamental fairness and impartiality of the proceedings so as to mandate reversal or even modification. *Hope v. State*, 732 P.2d 905, 907 (Okla.Crim.App. 1987). This assignment of error is without merit.

Accordingly, for the foregoing reasons, appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.