Stephen Lee ALLEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–92–120.

Court of Criminal Appeals of Oklahoma.

Oct. 28, 1993.

As Corrected Nov. 29, 1993.

Rehearing Denied Dec. 6, 1993.

Alan R. Carlson and Kevin D. Buchanan, Garrison, Brown, Carlson & Buchanan, Bartlesville, Trial and Appellate Counsel for Appellant.

Craig D. Corgan, Washington County Dist. Atty., Bartlesville, Trial Counsel, and Susan B. Loving, Atty. Gen. of Oklahoma and Dan Connally, Asst. Atty. Gen., Oklahoma City, appellate counsel for appellee.

### OPINION

CHAPEL, Judge:

Stephen Lee Allen was charged by Information in Washington County District Court Case No. CRF–90–239 with Murder in the First Degree, in violation of 21 O.S.Supp.1982, § 701.7(A). The State filed a bill of particulars seeking the death penalty, alleging the murder was especially heinous, atrocious or cruel. Following a trial before the Hon. John G. Lanning, District Judge, the jury found Allen guilty of first degree murder and recommended he be sentenced to life in prison without parole. The trial court sentenced accordingly and Allen appeals.

On the evening of June 11, 1990, Allen's wife Sandra was viciously attacked and bludgeoned to death in the family home. Allen testified he arrived home that evening with one of his young sons, and as he drove into his driveway he noticed the shadowy figure of a person at the edge of his patio. When the auto lights hit the person, he observed the figure run from his home. Allen locked his son in the auto and ran into the house where he found his wife lying on the floor in a pool of blood. In an effort to revive her, Allen said he shook her causing blood to spatter on him and about the room. Allen then went to the phone to call for help. Seeing a ball peen hammer lying by the phone, he picked it up and in frustration, struck the counter top. Fearing his bloody prints on the hammer might implicate him in his wife's injuries, he further testified that he cleaned the hammer with paper towels and hid both the hammer and the towels in the attic. He then called for help.

The authorities found the hammer and towels and charged Allen with his wife's murder. The medical examiner testified that blunt force head injuries caused her death. The State also presented evidence concerning an extramarital affair Allen had with a secretary in his office which had ended about six months before his wife's death. Other evidence pointed to problems in the Allen marriage. The jury was sufficiently convinced of Allen's guilt to convict him, although it refused to impose the death penalty. Rather, the jury recommended the sentence of life without parole.

 Allen complains he was prejudiced by the trial judge's questioning of witnesses at the trial. Initially, we note there is no question about the authority of a trial judge to question witnesses. This authority is statutorily created and has long been recognized by this Court. See 12 O.S.1981 § 2614(B); *Howard v. Territory*, 15 Okl. 199, 79 P. 773, 774 (1905). See also *Hicks v. State*, 713 P.2d 18, 20 (Okl.Cr. 1986). However, while trial judges may have the authority to question witnesses, they should be very careful in exercising such power. Trial judges must remain neutral and should not indicate their opinion as to guilt or innocence in any trial. *Richmond v. State*, 456 P.2d 897, 898 (Okl. Cr.1969). The Oklahoma Constitution guarantees a person charged with a crime a trial before an unbiased judge. Okl. Const. art. II, § 6. See also *Arnold v. State*, 803 P.2d 1145 (Okl.Cr.1990). Therefore, the high degree of latitude normally afforded trial judges to question witnesses must be balanced against the right of a defendant to a trial free of prejudice. See *Stanley v. State*, 94 Okl.Cr. 122, 230 P.2d 738, 744–45 (1951); *Schmitt v. State*, 57 Okl.Cr. 102, 47 P.2d 199, 212 (1935).

In this trial, the judge questioned the defendant and two other defense witnesses. We have reviewed the trial transcript and the questions asked by the trial judge. Nothing in the record reveals the jury was

informed of the court's opinions or views or that the defendant was unfairly prejudiced by the trial judge's questions.

■ In his second proposition, Allen asserts it was error for the trial judge to deny his pretrial motion for a change of venue from Washington County. As a subproposition he also complains publicity surrounding the trial was so pervasive as to deny him a fair trial. This case did generate substantial pretrial and trial publicity in Washington County, and indeed, in Northeastern Oklahoma. The fact that publicity existed and was adverse to the defendant does not alone form the basis for reversal. The inquiry is whether or not the defendant received a fair trial by an impartial jury. *Gregg v. State*, 844 P.2d 867, 871 (Okl.Cr.1992); *McBrain v. State*, 763 P.2d 121, 123–24 (Okl.Cr.1988).

■ Allen correctly cites *Coates v. State*, 773 P.2d 1281, 1286 (Okl.Cr.1989) as setting forth a two-prong test to determine whether or not a defendant's due process rights have been violated by the failure to grant a motion for change of venue. The first *Coates* prong is an inquiry into whether "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." *Id.* at 1286. Prejudice will be presumed if the media has pervaded the proceedings. The second prong involves examining the entire proceedings to determine if the defendant received a fundamentally fair trial. *Id.* at 1286. *See also Brown v. State*, 743 P.2d 133, 136 (Okl.Cr.1987), *quoting Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

■ The trial judge in this case was careful to allow extensive questioning of prospective jurors. Prospective jurors are acceptable even if they have heard about a case through the media and even if they have formed an opinion about the case, provided they are willing and able to set aside their opinions and base their decisions in the case solely on the evidence presented at trial. *Gregg v. State*, 844 P.2d 867, 871 (Okl.Cr.1992); *Kiser v. State*, 782 P.2d 405, 409 (Okl.Cr.1989). The jurors in this case indicated on voir dire they could do just that.

To support his motion for change of venue Allen submitted three affidavits from Washington County citizens and testimony from an expert along with a public opinion survey performed by the expert. We are not persuaded by the affidavits, the testimony or the survey that Allen has met either prong of the *Coates* test. There was substantial publicity, but the publicity did not pervade the pretrial or trial proceedings. Moreover, after reviewing the entire transcript to determine if the publicity unfairly affected the trial, we find it did not.

■ Allen also complains he was prejudiced by the trial court's adverse rulings on his motion to require the State to cease testing by experts on the ball peen hammer and the motion in limine relating to the testing. Allen essentially argues it is fundamentally unfair to a defendant to permit the State, with all of its resources, to continue expert testing right up to the trial's commencement. The prosecution provided the defense the results of its final testing on June 18, 1991. Voir dire of the jurors in this case began on July 15, 1991, and the testimony began on July 22, 1991. Allen, therefore, had the results of the State's testing approximately one month before the trial began.

There is no question the test results were prejudicial to Allen. However, in any criminal case all or at least most relevant evidence offered by the State is prejudicial in that it tends to prove the case against the defendant. The prejudice against Allen, therefore, directly resulted from the evidence and not from the adverse rulings by the trial court. Moreover, under these circumstances we are not persuaded that one month prior to trial is too little time to have been furnished the test results.

■ In another proposition concerning discovery, Allen contends the trial court erred in refusing to order the State to provide him with work papers of its experts. Our decision in *Allen v. District Court*, 803 P.2d 1164, 1168 (Okl.Cr.1990), requires the prosecution to disclose "any

reports or statements made by experts in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons."

In this case Allen was provided with the results of the prosecution's experts. He now asserts, however, that in certain instances, discovery of the conclusory reports alone is inadequate and urges this court to extend the discovery principles set forth in *Allen.* This Court has never allowed the discovery of prosecution witnesses' work papers. *See Wing v. State,* 490 P.2d 1376, 1382 (Okl.Cr.1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1772, 32 L.Ed.2d 119 (1972); *Smith v. State,* 462 P.2d 328, 330 (Okl.Cr.1969). Although there is some merit to Allen's arguments concerning difficulties caused by production of the bare results or conclusions of experts, we decline at this time to expand the requirements set forth in *Allen.*

■ Allen next asserts error on the part of the trial court in failing to sustain challenges for cause to three specified jurors. The decision whether to disqualify jurors remains within the trial court's sole discretion. *Workman v. State,* 824 P.2d 378, 380 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992); *Sherrick v. State,* 725 P.2d 1278, 1282 (Okl. Cr.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987). The decision should not be overturned in the absence of an abuse of that discretion. *Simpson v. State,* 827 P.2d 171, 175 (Okl. Cr.1992); *Bickerstaff v. State,* 446 P.2d 73, 77 (Okl.Cr.1968)

■ A review of the voir dire transcript clearly indicates that in the case of the three prospective jurors about which Allen complains, each asserted they could put aside personal predilections and follow the law. It is not error for the trial court to refuse to disqualify a prospective juror for cause if that juror agrees to follow the law. *Boltz v. State,* 806 P.2d 1117, 1122 (Okl.Cr. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991).

■ Allen next asserts the trial court erred in allowing the State to present evidence of the affair with the secretary and in allowing rebuttal evidence by two witnesses. Because the affair had ended about six months before his wife's death, Allen urges it was not relevant. Further, he argues the State offered such evidence to prove him a "bad man" and its prejudicial effect far outweighs any probative value. We disagree.

The mere fact that Allen had at one time been unfaithful to his wife might not be relevant. Here, however, while the evidence indicated the sexual relationship had ended, the evidence also clearly established that Allen and the secretary maintained a very close personal relationship up to the date of the death. Along with proof of the affair, numerous notes were introduced which were taken from his electronic mail system. These notes revealed that he and the secretary discussed the most intimate sexual problems in the Allen marriage. This evidence was relevant. Past acts are often relevant to show motive and have been admitted into evidence on many occasions. *See* 12 O.S.1981, § 2404(B); *Cook v. State,* 704 P.2d 86, 88 (Okl.Cr.1985); *Bristow v. State,* 644 P.2d 118, 120 (Okl.Cr. 1982). The facts concerning his relationship with the secretary coupled with the evidence concerning his marital difficulties form a sound basis for his motive to murder his wife. There was no error in admitting such evidence.

In the same proposition of error, Allen complains the trial court erred in allowing the State to present the rebuttal testimony of Tom Bevel and Alan Eastman. As to witness Bevel, who testified as an expert on blood spatter, Allen contends his testimony was offered only so the State could have the last word on that issue. He further argues the testimony of Bevel was merely a rehash of previous testimony of another expert presented by the State.

The witness, Alan Eastman, testified on rebuttal concerning a statement Allen made immediately after his wife's funeral. According to Eastman, Allen said, "I don't know if I did it or not, I just don't remem-

ber what happened." (Tr. 8/7, 8, 10/91 pg. 16 ln. 5–6) Similar testimony had been presented earlier by another witness. Allen denied making such a statement. On appeal Allen contends he was not given proper notice of Eastman's testimony and, in addition, the testimony does not constitute rebuttal.

We reject the proposition that the trial court erred in allowing the rebuttal testimony of Bevel and Eastman. The decision whether or not to admit testimony is a matter within the discretion of the trial court and is not grounds for reversal absent abuse. *Spencer v. State*, 795 P.2d 1075, 1078 (Okl.Cr.1990). Further, as to rebuttal testimony we have held "[r]ebuttal evidence may be offered to explain, repel, disprove, or contradict facts given in evidence by an adverse party, regardless of whether such evidence might have been introduced in the State's case in chief or whether it is somewhat cumulative." *Kinsey v. State*, 798 P.2d 630, 633–34 (Okl.Cr. 1990); *see also Salyers v. State*, 755 P.2d 97, 102 (Okl.Cr.1988); *Smith v. State*, 695 P.2d 864, 868 (Okl.Cr.1985).

Allen complains that the trial court erred in allowing the State to ask questions intended to embarrass his expert forensic pathologist. Some of the *voir dire* was conducted in the presence of the jury and some outside its presence. Some of the questions dealt with issues extremely remote in time and others, which the State attempts to justify as showing bias, were irrelevant. We are not persuaded, however, that these minor imperfections require reversal. The admission of evidence is within the trial court's discretion and we find no abuse here. *Spencer v. State, supra.*

The Bartlesville Police Department videotaped the crime scene shortly after arriving at the house. The trial court permitted the jury to view the video portion of the tape, but excluded from evidence the audio portion of the tape. Allen contends the trial court erred in excluding the audio portion of the tape. We disagree. While the audio may have had some relevancy, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury...." 12 O.S.1981, § 2403; *see Cooper v. State*, 671 P.2d 1168, 1173 (Okl.Cr.1983).

Allen sought to admit the audio portion to lay the groundwork for his challenge of the investigative procedures and to show that he was immediately considered the primary suspect, thereby causing the police to abandon his theory of a burglary by the "shadow of a figure" he observed leaving his residence. However, Allen as much as concedes he was able to introduce through witnesses' testimony, all of the points he might have made had the audio portion of the tape been admitted. *See, e.g. Sellers v. State*, 809 P.2d 676, 683 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991). Even if the audio portion of the tape should have been admitted, its exclusion did not constitute reversible error. It is clear that the information Allen sought to introduce through its admission was placed before the jury through witnesses' testimony.

Finally, Allen contends the evidence was insufficient to support a guilty verdict. The standard of review applicable to this proposition is "[w]hen reviewing for sufficiency of the evidence, the question is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Luna v. State*, 829 P.2d 69, 73 (Okl.Cr.1992); *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

In support of this proposition, Allen raises five issues. First, he contends a contact lens that did not belong to him or his wife was found on the victim's body. He asserts this casts doubt on the State's theory that he was the killer. However, the victim's optometrist testified the lens in question was consistent in form and strength with the lens he had prescribed for her a few months prior to her death.

Secondly, Allen argues the State failed to prove that his relationship with the secretary motivated him to murder his wife. He contends that because this extramarital affair had ended months before the murder was committed, it could not have been his motive for killing his wife. While the physical relationship *may* have ended, there was substantial evidence of a continuing close personal relationship with the secretary. This evidence along with substantial evidence of sexual problems in the Allen marriage sufficiently enabled the jury to find motive.

Shortly before her death, while still at work, the victim received an unusual telephone call from a stranger. Allen argues in his third subproposition that the State's evidence failed to explain the call. Perhaps so, but the facts and circumstances surrounding the call were presented to the jury for whatever weight it chose to give them.

Substantial evidence was presented to the jury on the issue of blood spatter. Allen contends in his fourth subproposition his experts were highly qualified and testified the physical evidence was consistent with his theory of the case. On the other hand, Allen is critical of the methodology and testing performed by the State's expert. The point, however, is simply that the evidence conflicted on this issue. The jury resolved the conflict in favor of the State.

In his fifth and final subproposition concerning insufficiency of the evidence, Allen contends the ball peen hammer could not have been the murder weapon. Again, the evidence was somewhat conflicting. There was evidence the victim's injuries, while caused by a blunt instrument, were not consistent with those normally caused by a hammer. On the other hand, the State's expert testified he could not eliminate the hammer as the murder weapon, and Allen's own expert indicated the manner in which the hammer was used could be a factor in the kinds of injuries a hammer would typically cause. Again, the evidence on the issue was conflicting but sufficient.

This was an extremely hard fought case in which virtually every detail was challenged and in which very able counsel represented both sides. The fact that the evidence was challenged, however, does not mean the evidence was insufficient. When viewed in the light most favorable to the State, the evidence in this case was entirely sufficient to enable the jury to find the essential elements of the crime beyond a reasonable doubt. *Luna v. State, supra.*

Accordingly, judgment and sentence of life without parole is **AFFIRMED.**

LUMPKIN, P.J., and JOHNSON, V.P.J., and LANE, J., concur.