2002 OK CR 23

**L.B. ALEXANDER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–2000–472.

Court of Criminal Appeals of Oklahoma.

May 30, 2002.

Rehearing Denied Aug. 15, 2002.

## ACCELERATED DOCKET ORDER

¶ 1 Appellant was charged with Possession of a Firearm, After Former Conviction of a Felony, in Case No. CF–98–163, and pled guilty to a reduced misdemeanor charge. Appellant was sentenced to either complete Drug Court or serve a one (1) year sentence. In Case No. CF–99–35, Appellant was charged with Possession of a Controlled Dangerous Substance (CDS)—Methamphetamine, pled guilty, and was sentenced to twenty (20) years or completion of Drug Court. Appellant was also charged, in Case No. CF–99–40, with Possession of CDS—Methamphetamine, pled guilty and was sentenced to twenty (20) years or the completion of Drug Court.[1] All of these cases were filed in the District Court of Hughes County. Appellant was sentenced to Drug Court for each

of the violations, and his Drug Court treatment began on May 6, 1999.

¶ 2 On May 8, 2000, the State filed an application to terminate Appellant from Drug Court, alleging five (5) violations of the terms of his Drug Court agreement. A hearing was held April 4, 2000, and Appellant was terminated from Drug Court. On April 12, 2000, the District Court sentenced Appellant as follows:

| | |
|---|---|
| CF–98–163 | One year suspended sentence revoked in full |
| CF–99–35 | Twenty (20) years for Unlawful Possession of CDS |
| CF–99–40 | Ten (10) years for the Unlawful Possession of CDS |
| | One (1) year for Unlawful Possession of Paraphernalia |
| | One (1) year for Attempted Escape From an Officer |

Sentences in all of the cases were ordered to run concurrently. From these Judgments and Sentences, Appellant appeals.

¶ 3 On appeal Appellant raises five propositions of error:

1. The trial court abused its discretion in terminating the Appellant from Drug Court by not recognizing the relapses and restarts that commonly occur with drug addicts as required by 22 O.S. 1998 § 471.7;

2. Due process was denied to the Appellant because the Drug Court judge failed to address the requirements set forth in *Hagar v. State;*

3. The evidence does not support the allegations set forth in the State's Application to Terminate;

4. The Drug Court Judge removed himself as an adjudicatory body when he became a participant in the proceeding, thus infringing on the Appellant's right to a fair and impartial trial; and

5. The Court sentenced the Appellant after considering testimony and facts not admitted into evidence.

¶ 4 Pursuant to Rule 11.2(A)(2), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2000), this appeal was automatically assigned to the Accelerated Docket

---

1. This case also included charges of Unlawful Possession of Paraphernalia and Attempted Escape from a Police Officer.

of this Court. See also, *Hagar v. State*, 1999 OK CR 35, ¶ 12, 990 P.2d 894, 898. The propositions or issues were presented to this Court in oral argument October 11, 2001, pursuant to Rule 11.2(F). At the conclusion of oral argument, the matter was taken under advisement. Appellant's termination from participation in the Drug Court program is **AFFIRMED,** as are the sentences assessed by the District Court.

■ ¶ 5 We find no support in the record for Appellant's claim that the trial court did not consider Appellant's relapses and restarts as set forth at 22 O.S.1998, § 471.7. A review of Appellant's Drug Court program history shows that over a two-year period from Appellant's acceptance into Drug Court until his termination from the program, Appellant tested positive for cocaine usage no fewer than five times. The response to each of these infractions was incarceration (from two to five days each time) and/or placement in a treatment program. The final response was to terminate Appellant from the program. We find that the trial court repeatedly recognized and considered Appellant's relapses and restarts. Appellant, on the other hand, did not respond to the assistance offered him through the Drug Court program.

■ ¶ 6 Appellant next alleges that the requirements set forth by this Court in *Hagar v. State* were not followed, denying him due process. Appellant's complaint seems to be that the order of the District Court terminating his Drug Court participation was not specific enough. The District Court, the Honorable Gregg Smith, noted in his order terminating Appellant's Drug Court participation that Appellant had violated the terms of his Drug Court contract and had failed on numerous occasions to cooperate with the Drug Court staff. While the written order could have contained more detail concerning Appellant's failure to properly participate in and complete his Drug Court program, the trial court, on the record, specifically noted Appellant's repeated relapses, his refusal to take responsibility for his behavior, his uncooperative attitude, his refusal to acknowledge his relapses and to admit to testing positive for drugs while a Drug Court participant, his secretive behavior, and his inability

to abide by Drug Court rules. There was more than sufficient independent, corroborative evidence presented at the termination hearing to find Appellant had violated the terms of his Drug Court contract. We likewise find no merit in Appellant's claims that the evidence presented at the termination hearing did not support the allegations set forth in the State's application to terminate or that the trial court sentenced Appellant after considering facts not admitted into evidence.

■ ¶ 7 While we affirm Appellant's termination from Drug Court, we find it necessary to address Appellant's fourth proposition of error in greater detail. Appellant alleges that the District Court, by questioning him during the termination proceeding, became an advocate for the State and was no longer able to impartially evaluate Appellant's termination from Drug Court. When Appellant objected to the questions being asked by the court, Judge Smith responded that he was "making a record as part of the treatment team." Appellant argued that at this point Judge Smith became an advocate of the State, and his conduct constituted prejudicial and reversible error. At no time did Appellant request that Judge Smith recuse himself. Instead, Appellant simply objected to Judge Smith's line of questioning. Appellant alleges his termination from Drug Court should be reversed because Judge Smith was biased and, as a result, Appellant's due process rights were violated.

¶ 8 The Oklahoma Drug Court Act [Act], 22 O.S.Supp.1998, §§ 471–471.11, *et seq.* authorizes creation of a Drug Court program in each district court of this State. Drug Court is a type of diversionary sentence, and was established by the legislature as "a highly structured judicial intervention process for substance abuse treatment of eligible offenders which expedites the criminal case, and requires successful completion of the plea agreement in lieu of incarceration." 22 O.S.Supp.1998, § 471.1(A); *Woodward v. Morrissey*, 1999 OK CR 43 ¶ 10, 991 P.2d 1042, 1045; *Hagar*, 1999 OK CR 35 ¶ 7, 990 P.2d at 897. We have previously established that a defendant is entitled to due process when the State seeks to terminate his or her

participation in Drug Court. *Id.* ¶¶ 11–14, 990 P.2d at 898–99.

¶ 9 The Act creates a court-approved plea agreement, providing a separate rehabilitation procedure for an individual who would otherwise be prosecuted and punished for their drug-related offenses in a traditional criminal setting. *Woodward,* 1999 OK CR 43 ¶ 12, 991 P.2d at 1045. As part of this non-traditional, criminal approach, the legislature established a procedure for accepting persons into the program, developing a rehabilitation plan, monitoring and evaluating the defendant's participation in the plan, and when necessary, removing a participant from the program upon non-compliance with the Drug Court contract. 22 O.S.Supp.1998, §§ 471.1–471.11, *et seq.* Whenever possible, a Drug Court team is to be established to oversee implementation of the Drug Court program with regard to each Drug Court participant. That team is to consist of a district attorney, a defense attorney, and a judge to administer the program. 22 O.S.Supp.1998, § 471.1(D). The Drug Court team should also include "other persons designated by the Drug Court team who shall have appropriate understanding of the goals of the program and of the appropriate treatment methods for various conditions." *Id.*

¶ 10 By statute, the judge overseeing a defendant's Drug Court program is part of that Drug Court team. The Act also provides that assignment of *any person* to the Drug Court team shall not preclude the assigned person from performing other duties required in the course of their office or employment. *Id.* It appears, from the face of the statute, that the Drug Court team judge is not precluded, by virtue of being assigned to a particular defendant's Drug Court team, from making determinations regarding that defendant's termination from the Drug Court program.

¶ 11 Further support for this position appears at § 471.7, titled "Monitoring of treatment progress." *See,* 22 O.S.Supp.1998, § 471.7. Section 471.7(A) specifically states that the designated Drug Court judge *shall* make all judicial decisions concerning any case assigned to the Drug Court docket or program. The Drug Court judge is also charged with the responsibility of requiring

a progress report and periodic review of Drug Court participants, receiving reports about a defendant's progress from treatment providers and supervising staff, and conducting hearings to review the offender, the treatment plan and the provisions of the performance contract. 22 O.S.Supp.1998, § 471.7(A), (B). The Drug Court judge may establish a regular schedule for progress hearings for Drug Court participants, but is not required to do so. 22 O.S.Supp.1998, § 471.7(C). The Drug Court judge is to recognize relapses and restarts in the program which are considered part of the rehabilitation process, and shall accomplish monitoring and offender accountability by ordering progressively increasing sanctions (or providing incentives) rather than removing an offender from the program when relapse occurs, except when the offender's conduct requires revocation from the program. 22 O.S.Supp.1998, § 471.7(E).

¶ 12 If revocation or termination from the program is sought, the court shall revoke an offender from the program upon finding that he or she has violated the terms of the plea agreement or performance contract, and that disciplinary sanctions have been insufficient to gain compliance. *Id.* The Drug Court judge has the authority to modify a treatment program upon determining that a program is not benefiting an offender; however, the judge cannot change the terms of the written plea agreement after a defendant has been admitted to the program. 22 O.S.Supp. 1998, § 471.7(F), (G). As stated in the Act, the primary objective of the Drug Court judge, in monitoring both the offender and the treatment plan, is to "keep the offender in treatment for a sufficient time to change behaviors and attitudes." 22 O.S.Supp.1998, § 471.1(F). In conclusion, the legislature stated that "nothing in this provision shall be construed to limit the authority of the judge to remove an offender from the program and impose the required punishment stated in the plea agreement after application, notice and hearing." 22 O.S.Supp.1998, § 471.1(G).

¶ 13 It is apparent that the legislature intended to assign each offender to a particular Drug Court team. This team includes a supervising judge for the express purpose of developing some sense of continuity in the drug treatment program established for

these offenders, in hopes that the offender will change his or her behaviors and attitudes. Consequently, the same judge monitors an offender from his or her acceptance into the program until his or her successful completion of, or termination from, the Drug Court program.

¶ 14 It is this statutorily-mandated monitoring which appears to form the basis of Appellant's complaint. In *Hagar v. State,* this Court outlined the procedure to be used in a Drug Court termination proceeding to meet the requirements of due process. The Drug Court judge, at the termination hearing, is required to state on the record the reasons for terminating a Drug Court offender's participation in the program. *Hagar,* ¶ 15. It is evident from the record in this case that Judge Smith, in questioning Appellant, was making a record, establishing the reasons for terminating Appellant from the Drug Court program.

¶ 15 We do not find, from a review of the record in this matter, that Judge Smith removed himself from his position as an adjudicator simply by questioning Appellant during the termination hearing. Judges routinely ask questions of witnesses during criminal proceedings for any number of reasons: to clarify answers, establish parameters, ensure that the witnesses understand the proceedings, make a record, *etc.* There is no question that a trial judge has authority to question witnesses, and there was no error in Judge Smith's inquires of the defendant. *See,* 12 O.S.1991 § 2614(B); *Allen v. State,* 1993 OK CR 49 ¶ 4, 862 P.2d 487, 489, *cert. denied,* 511 U.S. 1075, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994).

¶ 16 However, Appellant also claims that the proceedings were inherently biased because they were conducted by Judge Smith, a member of the Drug Court team. Appellant argues that, in his unique position as a Drug Court team member, Judge Smith crossed the line from being an adjudicator to being a participant in Appellant's treatment, making him unable to fairly evaluate the State's request that Appellant be terminated from the Drug Court program.

¶ 17 It is undisputed that our State Constitution guarantees those charged with a crime a trial before an unbiased judge. Okl. Const. art. II, § 6; *Allen v. State,* 1993 OK CR 49 ¶ 4, 862 P.2d at 489. To ensure due process, a defendant who claims bias or prejudice on the part of a judge may file a motion for recusal requesting that the judge disqualify himself or herself from presiding over the defendant's trial. *See* 20 O.S.1991, § 1403, Rule 15, *Rules for District Courts of Oklahoma,* Title 12, Ch. 2, App. 1 (2001).

¶ 18 Appellant, in this case, never requested recusal, nor alleged any bias on the part of the District Court until he presented his case for appeal to this Court. Appellant's failure to request recusal at the district court level waives the issue of judicial bias for purposes of appeal, restricting this Court's review to plain error. *See Nolte v. State,* 1994 OK CR 81 ¶ 26, 892 P.2d 638, 645. As the issue here addresses Appellant's fundamental right to an impartial tribunal, we will review for plain error.

¶ 19 We find nothing in the record presented to this Court that requires reversal of the District Court's order terminating Appellant from Drug Court. Appellant's allegations of bias, premised solely on Judge Smith's position as a member of his Drug Court team, do not constitute error sufficient to require reversal. There is no indication that Appellant was deprived of a fair proceeding, and there was more than sufficient evidence in the record to support the District Court's finding that Appellant should be terminated from Drug Court. Undisputed testimony presented at the hearing revealed that over a two-year period, Appellant repeatedly tested positive for cocaine use, failed to attend scheduled meetings and counseling sessions, was uncooperative, was hard to keep track of, refused to acknowledge his relapses, refused to admit to his positive drug tests, and failed to report when required. In general, Appellant refused to take responsibility for his behavior. Numerous sanctions were imposed upon Appellant, including incarceration, but Appellant still refused to comply with the terms of his Drug Court agreement. These facts were the basis for Appellant's revocation from Drug Court, not any perceived bias that he now claims Judge Smith harbored against him. Moreover, Appellant made no record showing the extent of Judge Smith's participation in Appellant's treatment and/or his involvement as a member of

the Drug Court team which may have supported Appellant's claim of bias.

¶ 20 However, we recognize the potential for bias to exist in a situation where a judge, assigned as part of the Drug Court team, is then presented with an application to revoke a participant from Drug Court. Requiring the District Court to act as Drug Court team member, evaluator, monitor and final adjudicator in a termination proceeding could compromise the impartiality of a district court judge assigned the responsibility of administering a Drug Court participant's program.

¶ 21 Therefore, in the future, if an application to terminate a Drug Court participant is filed, and the defendant objects to the Drug Court team judge hearing the matter by filing a Motion to Recuse, the defendant's application for recusal should be granted and the motion to remove the defendant from the Drug Court program should be assigned to another judge for resolution. It is the defendant's responsibility, when presenting this claim of bias and his request for recusal, to provide facts sufficient to support his claim that the judge assigned to his Drug Court termination proceeding was a member of the defendant's Drug Court Team. Failure to request recusal waives the issue for appellate review.

¶ 22 **IT IS THEREFORE THE ORDER OF THIS COURT,** by a vote of five (5) to zero (0), that the order terminating Appellant's participation in Drug Court is **AFFIRMED.** Appellant's sentences, as assessed by the District Court of Hughes County in Case Nos. CF–98–163, CF–99–40 and CF–99–35 are also **AFFIRMED.**

¶ 23 **IT IS SO ORDERED.**

¶ 24 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 30th day of May, 2002.

/s/ Gary L. Lumpkin, specially concurs.
GARY L. LUMPKIN, Presiding Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge
/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge
/s/ Reta M. Strubhar
RETA M. STRUBHAR, Judge
/s/ Steve Lile
STEVE LILE, Judge

LUMPKIN, Presiding Judge: special concur.

¶ 1 I concur in the Court's decision to affirm Appellant's termination from Drug Court based on the analysis in the opinion. However, I find that in its present form, the Drug Court Act violates the separation of powers doctrine by placing a judge in the role of performing executive and judicial functions simultaneously, *i.e.,* serving as judge and parole officer at the same time.

¶ 2 Article IV, § 1 of the Oklahoma Constitution sets forth the three distinct branches of government, the Legislative, Executive, and Judicial. In this case we are concerned with the Executive Branch, which is addressed in Article VI, and the Judicial Branch addressed in Article VII. Article VI, § 10 provides for the creation and operation of a Pardon and Parole Board. The duty of the Board to "make impartial investigation and study of all applicants for commutations, pardons or paroles" is strictly a function of the executive branch of our government. In addition, the Department of Corrections is tasked with the responsibility of incarcerating and supervising individuals who have been convicted and sentenced for the commission of crimes in this state. *See also* 57 O.S.1991, §§ 332.2 and 501 *et. seq.* Further, probation and parole officers, as defined in 57 O.S.1991, § 515, are deemed to be peace officers.

¶ 3 On the other hand, judges in our judicial system, are to be independent adjudicators. *See* Okla. Const. art. II, §§ 6, 7, 20, 21; art. VII, § 1; *see also* Canons 1 and 3, *Code of Judicial Conduct,* Title 5, Ch.1, App. 4 (2002). The specific adjudicative responsibilities of a judge in a pending case are set forth in Canon 3.5. Historically, in criminal cases in this state, a judge presided over a trial and imposed a judgment based upon the verdict. While certain sentencing powers of the judge are set forth in 22 O.S.1991, § 991a, including the power to set forth conditions of probation, the statutes historically have not empowered judges to create or act as a judicial triumvirate wherein the judge,

by performing three distinct functions, legislates the rules, determines the judgment and enforces/supervises the judgment. If conditions of probation were imposed, the probationer was supervised by the Department of Corrections pursuant to its executive branch duties. 22 O.S.Supp.1999, § 991a. If a violation of the conditions of probation occurred, a probation officer prepared a report and provided it to the court and the district attorney. *Id.* The district attorney then determined whether to file an application to revoke the suspended sentence. *Id.* If an application to revoke was filed, a hearing was held before a judge, evidence was presented by the State to support the application to revoke, and the judge determined, based only upon the evidence presented at the hearing, whether the conditions of probation had been violated so as to warrant the revocation of the sentence. *Id.* The judge was not involved in the process until the evidence was presented in open court. The judge's sole role was that of an adjudicator. The Oklahoma Drug Court Act, 22 O.S.Supp.1997, § 471 *et seq.,* changed this process.

¶ 4 The Drug Court Act runs afoul of the separation of powers doctrine in that it makes the adjudicating judge a part of an executive, judicial, legislative triumvirate. The Drug Court Act requires the judge to participate in legislating the drug court program, supervising the execution of the program, and then adjudicating the issue of whether the probationer has violated the rules that same judge helped legislate and enforce. In the process, the probationer is denied his due process guarantee of a hearing before an objective, uninterested, and impartial judge.

¶ 5 While it is commendable that the Legislature is seeking new ways to deal with criminal offenders, it should not violate the concept of separation of powers by seeking to turn judges into probation officers. The role of the objective, unbiased judge is a crucial part of our judicial system. That special

position should not be denigrated in an attempt to ensure an offender complies with the rules of probation. I realize the use of these special type of courts are the "blue light specials"[1] in many states today. However, using courts and judges as the "hammer" to do the job corrections officials have failed to do cannot justify the violation of separation of powers provided in our constitution.[2]

¶ 6 Other constitutional avenues are available for the Legislature to implement an intensive supervision program for probationers. Administrative hearing officers within the Department of Corrections could be empowered to preside over and administer intermediate sanctions. Judges of the District Courts would retain the authority to revoke or accelerate probated sentences. This type of process would provide the same intensive supervision of probationers desired by the Legislature without violation of the doctrine of separation of powers. It would also continue to ensure that adjudications of violations of probation would take place before an objective independent judge. The role of a judge is not to be a social engineer but to interpret the law and facts and adjudicate the cases presented to the court. For that reason, I would urge the Court to uphold the legal doctrine of separation of powers and find the portions of the Oklahoma Drug Court Act which violate that doctrine unconstitutional.

---

1. A reference to the five minute specials promoted by a national discount store

2. In addition, placing judges in this role jeopardizes the protection of judicial immunity afforded to judges in performing their judicial duties. *See* *e.g., Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).