2010 OK CR 25

**Michael G. BURGESS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–2009–308.**

Court of Criminal Appeals of Oklahoma.

Nov. 16, 2010.

Steven Huddleston, Timothy R. Henderson, Huddleston, Pike, Henderson & Parker, Oklahoma City, OK, counsel for appellant at trial.

James M. Boring, District Attorney, James L. Swartz, Assistant District Attorney, Guymon, OK, counsel for the State at trial.

Alecia Felton George, George Law Office, Oklahoma City, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

### SUMMARY OPINION

LUMPKIN, Judge.

¶ 1 Appellant, Michael G. Burgess, was tried by jury and convicted of Engaging in a Pattern of Criminal Offenses (Count 1) (21 O.S.Supp.2004, § 425); Sexual Battery (Count 2) (21 O.S.Supp.2002, § 1123); Bribery By Public Official (Counts 6, 26, and 36)

(21 O.S.2001, § 382); Kidnapping (Count 7) (21 O.S.Supp.2004, § 741); Forcible Oral Sodomy (Counts 8 and 33) (21 O.S.Supp.2006, § 888(B)); and Second Degree Rape (Counts 9, 27, 29, 32 and 34) (21 O.S.Supp.2002, § 1111) in the District Court of Major County, Case Number CF–2008–60.[1] The jury recommended as punishment imprisonment for one (1) year and a fine in the amount of $10,000.00 in Count 1; a fine in the amount of $5,000.00 in Count 2; imprisonment for three (3) years in Count 6; imprisonment for five (5) years in Count 7; imprisonment for ten years in Count 8; imprisonment for five (5) years in Count 9; imprisonment for ten years in Count 26; imprisonment for ten years in Count 27; imprisonment for ten years in Count 29; imprisonment for ten years in Count 32; imprisonment for ten years in Count 33; imprisonment for ten years in Count 34; and imprisonment for ten years in Count 36. The trial court sentenced accordingly.[2] It is from this judgment and sentence that Appellant appeals.

¶ 2 Appellant raises the following propositions of error in this appeal:

I. The Trial Court Abused Its Discretion In Denying Mr. Burgess' Motion To Dismiss Counts 1, 26, 27, 29, 32, 33, And 34 Of The Amended Information Because The State Failed To Present Sufficient Evidence At The Preliminary Hearing To Prove That Mr. Burgess Committed The Offenses As Charged In Those Counts.

II. Insufficient Evidence Was Presented To Support Mr. Burgess' Convictions.

III. The Jury Instructions As Given Were Not Constitutional And Deprived Mr. Burgess Of His Due Process Rights Under The Fourteenth Amendment To The United States Constitution With Respect To All The Counts For Which He Was Convicted.

IV. In Light Of Unconstitutional Jury Instructions, The Deleterious Effect Of Which Pervaded And Tainted the Evidence Relating To All Of The Allegations Presented At Trial, And In Light Of Uncorroborated And Contradictory Testimony From The Alleged Victims, A Modification Of Mr. Burgess' Clearly Excessive Sentence Is Warranted.

¶ 3 After a thorough consideration of these propositions and the entire record before us on appeal including the original records, transcripts, and briefs of the parties, we have determined that neither reversal nor modification of sentence is warranted under the law and the evidence.

¶ 4 Appellant was the duly elected Sheriff of Custer County. Pursuant to his elected position, Appellant was appointed to serve on the Washita/Custer County Drug Court Team. Appellant's office conducted urinalysis testing of the drug court participants and one of his deputies was the drug court compliance officer. Appellant actively participated on the Drug Court Team.

¶ 5 Appellant befriended drug court participant, J.M. On February 7, 2006, Appellant repeatedly telephoned J.M. and requested that she travel from Custer County to his hotel room in Oklahoma City. J.M. acquiesced when Appellant demanded that she meet him or he would vote for her termination from drug court. When she arrived at the hotel, Appellant provided J.M. with alcohol, engaged in sexual intercourse with her, and performed oral sodomy on her person. Thereafter, Appellant engaged in sexual intercourse with J.M. at her home, at the home of a friend of the Appellant's, at a motel, and at Appellant's home while his wife was on vacation. At Appellant's home, Ap-

---

1. The jury acquitted Appellant on Counts 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, and 35 of the Amended Information. The charges were originally filed in Custer County, however, after preliminary hearing bindover, and prior to trial, a change of venue was granted, and the case was transferred to Major County.

2. Appellant will be required to serve 85% of his terms of imprisonment for forcible sodomy. 21 O.S.Supp.2002, 13.1(15). The trial court ordered each of Appellant's sentences to run consecutive to one another except that the court ordered Count 9 to run concurrent with Count 8, and Count 33 to run concurrent with Count 32.

pellant gave J.M. alcohol, engaged in several instances of intercourse, and performed oral sodomy upon J.M. Appellant and J.M. travelled to Oklahoma City for Drug Court Day at the State Capitol. Appellant repeatedly demanded and engaged in instances of sexual intercourse with J.M. in his hotel room.

¶ 6 During this timeframe, Appellant intervened in J.M.'s urinalysis testing at the Custer County Jail. Appellant instructed his employees to permit J.M. to test in the courthouse bathroom which was nicer than the jail restroom. On at least two separate occasions, Appellant intervened and stopped the jail employees from reporting J.M. for a positive test, took J.M. for a mouth swab test, and had the jail employees discard the positive urinalysis test.

¶ 7 On January 3, 2007, Appellant assisted the drug court compliance officer with an investigation into drug court participant, B.B. Appellant discovered that B.B. was in violation of the Drug Court's rules. He contacted the Drug Court Judge and pursuant to her order took B.B. into custody. The compliance officer assisted and investigated other drug court participants while Appellant drove B.B. to the jail. Through repeated comments on her future, Appellant painted the grim picture of jail, termination from Drug Court, and imprisonment for B.B. Appellant told B.B. that he could save her from prison and make her stay in the jail more comfortable. He pulled off the road near two barns and told B.B. that he would help her if she would help him. Appellant directed B.B. to perform oral sodomy on his person and engaged in sexual intercourse with B.B. The records within the sheriff's department reflected that it took Appellant approximately 44 minutes to transport B.B. the 5 mile distance from her home to the jail.

¶ 8 In May, 2007, J.M. informed Appellant that she could not do it anymore. Appellant informed her: "Well, you know what that means." (Tr. V, 1210, 1453–54). Subsequently, J.M. tested positive on her urinalysis test at the Custer County Jail. She tried to get Appellant to intervene both before and after the test, however, he ignored her requests. J.M. was placed in the Custer County Jail and sanctioned to one year inpatient treatment by the Drug Court. As she left the courtroom, she screamed: "I've effed [sic] the sheriff all this time, you can't do this to me." (Tr. V, 1211, 1490–92).

¶ 9 J.M.'s cousin, C.T., contacted Appellant and informed him that J.M. had DNA evidence proving their sexual relationship. Appellant offered to help C.T.'s brother get out of prison if she would obtain the evidence from J.M. and bring it to him.

¶ 10 The investigation into the circumstances further revealed that in the fall of 2005, Appellant had groped the buttocks and chest of a female deputy against her will while she was on duty inside the county courthouse. She left her employment with the county soon thereafter.

¶ 11 Appellant testified in his own defense at trial. He denied the incidents with B.B. and the female deputy. He flatly admitted a sexual relationship with J.M. but denied that there was anything unlawful about it. Under cross examination, Appellant was forced to admit that the Drug Court had control or authority over the lives of its participants.

¶ 12 In Propositions I and II, Appellant seeks to attack the special provisions of 21 O.S.Supp.2002, §§ 1111 and 888(B)(4) that make it a crime for certain government actors to engage in sex acts with persons under their supervision. He argues that he was not an employee of a state agency, county, or political subdivision that had supervision or authority over the victim. OUJI–CR(2d) 4–124, 4–128 (Supp.2007).

¶ 13 This Court has previously recognized that "any county, precinct, district, city, town or school district" constitutes a political subdivision. *Davenport v. State,* 20 Okl.Cr. 253, 256, 202 P. 18, 19 (1921); *Smith v. State,* 1963 OK CR 48, ¶ 11, 381 P.2d 900, 903; *Guy v. City of Oklahoma City,* 1988 OK CR 148, ¶ 10, 760 P.2d 1312, 1314. Both the County Sheriff's office and the District Court's Drug Court Team constitute political subdivisions of the state.

¶ 14 The Drug Court programs are statutorily required to provide "vigilant supervision" of their participants. 22 O.S.2001, § 471.1(G). "Whenever possible, a Drug

Court team is to be established to oversee implementation of the Drug Court program with regard to each Drug Court participant." *Alexander v. State*, 2002 OK CR 23, ¶ 9, 48 P.3d 110, 113. "[T]he judge overseeing a defendant's Drug Court program is part of that Drug Court team." *Id.*, 2002 OK CR 23, ¶ 10, 48 P.3d at 113. At a minimum the team should consist of the assigned judge, a district attorney, and a defense attorney. 22 O.S.2001, § 471.1(D). The Drug Court Team can designate other members to assist. *Id.* By statute, the Sheriff of the county is required to participate in the initial review of an offender to determine their eligibility for the program if they are held in the county jail. 22 O.S.2001, § 471.2(A). "The Drug Court Supervising Staff create the treatment plan for the participants and monitor their progress. 22 O.S.2001, § 471.4.

¶ 15 The Legislature has defined the term "employee" as any person who is authorized to act in behalf of a political subdivision or the state with or without being compensated. 51 O.S.Supp.2010, § 152(7). This includes all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision. *Id.;* Instruction No. 3–16, OUJI–CR(2d) (Supp.2009).

¶ 16 As to Proposition I, Appellant did not file a formal motion to quash before the district court arraignment thus he has waived appellate review of the alleged error for all but plain error. *Primeaux v. State*, 2004 OK CR 16, ¶ 18, 88 P.3d 893, 900; *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693. At preliminary hearing, the State showed that the offenses set forth in Counts 1, 26, 27, 29, 32, 33, and 34 had been committed and that there was probable cause that Appellant committed each offense. *Primeaux*, 2004 OK CR 16, ¶ 20, 88 P.3d at 900; *citing* 22 O.S.Supp.2003, § 258; *McCracken v. State*, 1994 OK CR 68, ¶ 8, 887 P.2d 323, 327. Probable cause existed that the victim was under the legal custody or supervision of a political subdivision of the state and that Appellant was an employee of the political subdivision that exercised authority over her. 21 O.S.Supp.2002, § 1111(A)(7). Plain error did not occur.

¶ 17 It must be noted that the Oklahoma Legislature has determined that those citizens who have been entrusted to the custody, supervision or authority of individuals serving in the capacity of officers, employees, or contractors with the state or its political subdivisions are due special protection during the time of custody or supervision. It is readily apparent that Appellant, as the elected Sheriff of Custer County, and statutorily designated member of the Drug Court team, is a person included within the parameters of the penal statutes in which the Legislature sought to include as owing special trust and confidence to those citizens ordered into their custody or control. Appellant violated that trust, and the provisions of the penal statutes, drafted to protect those committed citizens. The provisions of both 21 O.S.Supp. 2002, §§ 1111 and 888(B)(4) prohibit a county employee from engaging in sex acts with an individual under the county's supervision. Appellant as County Sheriff and designated Drug Court Member is included within both statutes as an individual for whom it is unlawful to engage in sex acts with persons under their supervision

¶ 18 As to Proposition II, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the victims were under the legal custody or supervision of a political subdivision of the state and that Appellant was an employee of the political subdivision that exercised authority over the victims beyond a reasonable doubt. *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–04.

¶ 19 Within Proposition II, Appellant also challenges the sufficiency of the evidence as to those offenses concerning victim, B.B. We find that the testimony of prosecuting witness B.B. did not appear incredible or so unsubstantial as to make it unworthy of belief. *Ray v. State*, 1988 OK CR 199, ¶ 8, 762 P.2d 274, 277; *Gilmore v. State*, 1993 OK CR 27, ¶ 12, 855 P.2d 143, 145. The jury rationally concluded that the prosecuting witness was in Appellant's vehicle a sufficient period of time for the offenses to have occurred. *Plantz v. State*, 1994 OK CR 33, ¶ 43, 876

P.2d 268, 281. Viewing the evidence in the case in the light most favorable to the State, we find it was sufficient to prove beyond a reasonable doubt that Appellant was guilty of the offenses concerning B.B. *Spuehler*, 1985 OK CR 132, ¶ 7, 709 P.2d at 203–04.

■ ¶ 20 As to Proposition III, Appellant properly preserved appellate review of his claim that the jury instructions inaccurately stated the law by raising a timely objection at trial. *Simpson*, 1994 OK CR 40, ¶ 2, 876 P.2d at 693. We find that the trial court did not abuse its discretion as the jury instructions accurately stated the applicable law. *Cipriano v. State*, 2001 OK CR 25, ¶ 14, 32 P.3d 869, 873; *Patton v. State*, 1998 OK CR 66, ¶ 49, 973 P.2d 270, 288.

■ ¶ 21 Appellant further claims that the jury instructions removed the State's burden to prove all of the essential elements of the offenses. Appellant did not raise this challenge before the district court, thus he has waived appellate review of the challenge for all but plain error. *Simpson*, 1994 OK CR 40, ¶ 2, 876 P.2d at 693. Plain error did not occur as the instructions did not relieve the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Birdine v. State*, 2004 OK CR 7, ¶ 3, 85 P.3d 284, 285; *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Regardless, any error in the instructions was harmless beyond a reasonable doubt based upon the overwhelming evidence of Appellant's guilt. *Birdine*, 2004 OK CR 7, ¶ 6, 85 P.3d at 286.

■ ¶ 22 As to Proposition IV, we find Appellant's sentences are within the applicable statutory ranges and when considered under all the facts and circumstances of the case, are not so excessive as to shock the conscience of the Court. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149; *Freeman v. State*, 1994 OK CR 37, ¶ 38, 876 P.2d 283, 291. We further find Appellant was not denied a fair trial by cumulative error. *Ashinsky v. State*, 1989 OK CR 59, ¶ 31, 780 P.2d 201, 209.

¶ 23 Accordingly, this appeal is denied.

**DECISION**

¶ 24 The judgment and sentence are hereby **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2010), the **MANDATE is ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, V.P.J. and C. JOHNSON, P.J., and SMITH, J., concur.

LEWIS, J., concur in result.