Greg A. FREEMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–85–30.

Court of Criminal Appeals of Oklahoma.

Sept. 9, 1988.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Greg A. Freeman, was tried by jury in Muskogee County District Court, Case No. CRF–82–333, and convicted of Grand Larceny. 21 O.S.1981 § 1704. The jury set punishment at five (5) years' imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict.

It is not necessary to recite all the facts in this case, as we find that the trial court allowed wholesale violations of the requirements of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) in allowing the introduction of "other acts" in its case-in-chief.

■ Appellant argues that a portion of the evidence complained of—sabotaging the burglar alarm system of the victim's house—could constitute another "crime," that of malicious mischief. *See* 21 O.S. 1981, § 1760. We think it unlikely that such a crime would have been charged under these circumstances. However, the trial court allowed that evidence in addition to testimony concerning other acts to be introduced to show intent. 12 O.S.1981, § 2404(B). Specifically, the jury heard testimony that appellant may have sabotaged alarm systems not only at the house where the theft occurred, but at two others as well. Additionally and of more interest, the court allowed evidence showing that twenty-five percent of appellant's wages were being garnished; that appellant had filed bankruptcy; that appellant took a medical leave of absence for an ankle injury; and that $200.00 was deducted from appellant's paycheck to pay for an automobile accident that occurred while appellant was driving a company vehicle. None of these acts is a crime, yet each carries a certain stigma that could influence a jury. This emphasis by the State on acts that may not be crimes and acts that are not crimes forces us to address the issue of whether an act must constitute a criminal offense before it is governed by Section 2404(B). We hold that an act not related to the crime charged need not constitute a violation of the criminal law for it to be governed by Section 2404(B).

We are of course aware that our Legislature, when it adopted the wording of the Federal Rules of Evidence, changed the language of Section 2404(B) from "Evidence of other crimes, wrongs or acts ..." to "Evidence of other crimes or acts...." However, when looking at the purposes behind the rule, we agree with Professor Whinery's original comment that "[i]t is not believed that any substantive change was intended by the deletion of the word ["wrong"] from the statute." 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 87 (1985). We arrive at this conclusion by examining the philosophy of the

federal rule upon which the Oklahoma rule was based. *Robinson v. State,* 743 P.2d 1088, 1090 (Okl.Cr.1987).

Section 2404(B) is essentially a codification of a common law principle. A person is to be convicted, if at all, by evidence that shows him guilty of the offense charged. *Wilkett v. State,* 674 P.2d 573, 576 (Okl.Cr.1984). This rule "is so deeply imbedded in our jurisprudence as to assume constitutional proportions." *United States v. Woods,* 484 F.2d 127, 141, n. 5 (4th Cir.1973) n. 5 (Widener, J., dissenting). It is therefore illogical to assume that one act would be inadmissible simply because it met the elements of a particular crime, while an identical or very similar act would be admissible simply because an essential element of the crime (e.g., intent) was missing. Or, as a federal court noted in an opinion discussing the similarity between the old rules with the Federal Rules of Evidence:

We do not agree that similar acts introduced to establish motive, intent, the absence of mistake or accident, or a common scheme or plan must necessarily be acts constituting a crime. Probably most of the acts dealing with the precise issue have involved other acts which were of a criminal nature because of the courts' concern that a defendant may be unduly damaged in the eyes of the trier of fact by being considered a common criminal, or in other words, the defendant would be being tried on the purity of his character rather than on his guilt or innocence of the crime charged.... As Wigmore points out [in the 3d edition, published in 1940], ... the criminality of other acts does not affect their admissibility; either they are relevant or they are not, in which case they are rejected; and the only bearing of their having the quality of criminality is that the undue prejudice involved in acts which are crimes is another reason for excluding them.

*United States v. Senak,* 527 F.2d 129, 143 (7th Cir.1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976).

We simply refuse to believe, in the absence of comments to the contrary, that our Legislature, with the omission of one single word, intended to wipe out reasoning that was in effect decades before the new rules were even a glimmer in the Supreme Court's eye.

■ In so holding that acts not crimes are subject to the limitations of Section 2404(B), we still adhere to the rule that the trial judge should "resolve all doubts in favor of admitting the evidence," *see Robinson,* 743 P.2d at 1090, and that the party objecting to the introduction of the evidence has the burden of establishing that prejudice substantially outweighs probative value. *See Croney v. State,* 748 P.2d 34, 37 (Okl.Cr.1987). We do not mean to imply that we are extending the protection of the rule to "every possible implication which might be conceived by a defense attorney." *Agee v. State,* 562 P.2d 913, 916 (Okl.Cr. 1977). Indeed, we hold to our previous rulings that if the crime (or act) is obvious only to the defendant, it will not be afforded the protection of the rule. *Id.* Here, however, the State went beyond permissible boundaries in introducing evidence of other acts.

■ The evidence showed that appellant stole a ring from the Bill Rowsey residence while a maid was present in the house. He was still in the residence and was caught leaving the area where the ring was kept, by the victim, who returned home while appellant was there. Yet the State introduced evidence tending to show that appellant sabotaged not only the alarm system of that house, but of two others on his route. This was combined with evidence showing that twenty-five percent of appellant's wages were being garnished; that appellant had filed bankruptcy; that appellant took a medical leave of absence for an ankle injury; and that $200.00 was deducted from appellant's paycheck to pay for damage to an automobile which appellant caused. None of these acts is a crime, yet there is a certain stigma attached to bank-

ruptcy and garnishment proceedings; and the only possible relevance of allowing testimony concerning a medical leave of absence is to imply that appellant was not truly injured, but rather was trying to obtain either time or money at company expense.

Such evidence is inadmissible because its probative value is substantially outweighed by its prejudicial effect. 12 O.S.1981, § 2403. However, we reverse not only because of its prejudicial nature, but also because the State failed to comply with the notice requirements of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) for admissibility under Section 2404(B). It fails on several counts.

(1) Despite the fact that the State introduced evidence concerning the acts in its case-in-chief, it made no attempt to give appellant a written statement of the offenses it intended to show. *Burks*, 594 P.2d at 774. Obviously, such failure also violated the ten day requirement. *Id.* Even assuming that the alarm systems were tampered with, the acts were done weeks earlier. And even assuming that tampering with the alarm system in the victim's home could be considered *res gestae*, it is too tenuous to connect that fact with tampering with alarm systems in two other houses with the subsequent theft in the victim's house.

(2) Assuming that there was a visible connection between tampering with the victim's alarm system and the larceny, we see none between the crime and tampering with other systems. Such a showing forces a defendant to defend against an offense for which he is not on trial. There is even less of a connection between the crime of grand larceny and garnishment of a paycheck, taking sick time, and having a vehicular accident.

(3) There was no showing by the State that the evidence was necessary to support the State's burden of proof. *Id.* at 775. The evidence was merely cumulative.

(4) Although we need not specifically address it, we have serious doubts that the State proved the intentional commission of the other acts by the clear and convincing standard. *Id.* Most, if not all, of the alarm malfunctions alleged by the State were described by its own witness as not unusual. Additionally, there was a lapse of nearly three months between the time the systems were serviced by appellant and witness Hunt.

Therefore, appellant's judgment and sentence is **REVERSED** and **REMANDED** for a **NEW TRIAL.**

BUSSEY, J., dissents.

PARKS, J., concurs.

BUSSEY, Judge, dissenting:

I must respectfully dissent from the majority's disposition of this case. While I agree that the evidence of alarm system tampering was inadmissible, I find the appellant has failed to establish that he was prejudiced by its erroneous admission. *See, Harrall v. State*, 674 P.2d 581, 583 (Okl.Cr.1984). Initially, I note, as does the majority, that the evidence of tampering was far from clear and convincing. Moreover, the record reveals that there was overwhelming evidence of the appellant's guilt.

In addition to the facts set forth by the majority, the following was introduced at trial. The victim testified that, at the time she confronted the appellant in her home, he stammered as if taken by surprise. She also stated that the appellant knew no alarm equipment was located in that area of the house because he had serviced the system four weeks earlier.

After leaving the residence, the appellant was observed with a diamond ring matching the description of the one stolen. A companion accompanied the appellant to the Gold Chain Jewelry Shop several days later where the appellant obtained a gold and diamond bracelet for his girlfriend. Approximately one month later, the appellant, his girlfriend, and the companion took a two week trip to Colorado and Las Ve-

gas, during which time the appellant purportedly paid for all expenses. Extensive evidence was introduced to show that the appellant had little money prior to the ring's disappearance with which to pay for the aforementioned expenses. (discussed infra)

Finally, the appellant's cellmate testified that the appellant admitted that he took the ring, described it in detail, and stated that he sold it at the Gold Chain Jewelry Shop. Based on this evidence, I would hold that the erroneous admission of the tampering evidence was harmless error. *See Newsted v. State,* 720 P.2d 734, 739 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599; and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I must also disagree with the majority's view that the introduction of evidence concerning the appellant's wage garnishment, bankruptcy filing, medical leave of absence, and paycheck deduction for an automobile accident was in violation of *Burks.* In addition to these items, the following is a partial list of other questions which were asked at trial: whether the appellant's company had a policy of discouraging outside employment and whether he had an outside job; how many hours per week appellant worked, how much he was paid per hour, and whether he was paid any bonuses; whether an employee was paid while on medical leave of avsence and whether the company paid for medical expenses; whether appellant was working when he and his friends went on their trip and whether he had a job lined up upon return; and finally, what the estimated value of the stolen ring was and how much the appellant purportedly received for it. It is my position that all of the aforementioned evidence was clearly probative to determine the appellant's financial status at the time he purchased the bracelet for his girlfriend and when he left on vacation. For the reasons stated above, I would affirm appellant's conviction.