Patsy Faye **COATES**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–86–68.

Court of Criminal Appeals of Oklahoma.

May 10, 1989.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Randy Malone, Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Vice Presiding Judge:

Appellant, Patsy Faye Coates, was tried and convicted of two counts of Willful Failure or Refusal of County Treasurer to Perform Duties of Her Office (19 O.S.1981, § 121 and 21 O.S.1981, § 345) (Counts I and II), two counts of Making False Entries in a Book of Account (21 O.S.1981, § 1586) (Counts III and IV), and three counts of Embezzlement By County Treasurer (19 O.S.Supp.1982, § 641) (Counts V, VI, and VII), in Wagoner County District Court, Case No. CRF–84–201, before the Honorable William Bliss, District Judge. The jury set punishment at one (1) year imprisonment and a fine of five hundred ($500.00) dollars for both Counts I and II, three (3) years imprisonment for Count III, seven (7) years imprisonment for Count IV, ten (10) years imprisonment for Count V, twenty-one (21) years imprisonment for Count VI, and fifteen (15) years imprisonment for Count VII. The Department of Corrections developed a Specialized Offender Accountability Plan and recommended that appellant's sentence be modified to twenty-one (21) years imprisonment with ten (10) years suspended, that a restitution plan be implemented and that appellant undergo psychiatric evaluation. Judgment and sentence was entered according to the recommendation of the Department of Corrections. We reverse and remand for a new trial.

A statement of the facts is unnecessary as we find appellant's second and third

assignments of error dispositive. We first address appellant's assertion that reversible error occurred when the trial court allowed the introduction of "other crimes or acts" evidence in violation of *Burks v. State,* 594 P.2d 771 (Okla.Crim.App.1979) and *Freeman v. State,* 767 P.2d 1354 (Okla. Crim.App.1988).

■ Initially, we note the State gave notice of intent to introduce evidence of appellant's use of the telephones in the county treasurer's office for personal business. Accordingly, the notice requirement of *Burks* was met on this one occasion. Appellant objected to the introduction of such evidence on the basis that it was not relevant to any of the exceptions listed in 12 O.S.1981, § 2404(B). The State asserts that such evidence was admissible either to show motive, intent, absence of mistake or accident, and identity or that it was admissible as part of the "res gestae" of the crime. After review, we fail to see how such evidence was probative of motive, intent, absence of mistake, or identity. Instead, the evidence clearly falls within the general rule of 12 O.S.1981, § 2404(B), which states "[e]vidence of other crimes or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

As to the claim of "res gestae," the use of the telephone for personal business was not so connected with the charged offenses as to form a part of the entire transaction. *Bruner v. State,* 612 P.2d 1375, 1377 (Okla. Crim.App.1980). Specifically, there was no evidence presented as to the dates of these phone calls or their relationship to the crimes charged. Absent a showing of close connection in time and space, this evidence is not admissible as "res gestae." *Wahid v. State,* 716 P.2d 678, 680 (Okla.Crim.App. 1986), *cert. denied,* 476 U.S. 1173, 106 S.Ct. 2899, 90 L.Ed.2d 985 (1986).

■ The State also introduced evidence of appellant's failure to deposit state warrants within ninety (90) days. Originally, this incident was charged as a separate count in the information; however, at the conclusion of the preliminary hearing, the magistrate refused to bind appellant over on this charge. At trial, the prosecutor elicited detailed testimony from five different witnesses regarding the state warrants. Defense counsel's objections were overruled.

The State argues that this evidence was admissible as part of the incidents charged in the second count of the Information, or alternatively, under the "res gestae" exception. We must disagree. After review of the second count of the Information, we find nothing to support the State's assertion that these incidents fell within the crime charged in the second count. The Information specifically refers to the failure to make deposits which are listed in an attachment titled Exhibit #1. Although Exhibit #1 contains the dates and dollar amounts of deposits which were allegedly never made, none of the dates or amounts correspond to the dates or amounts of the state warrants. Thus, we can only conclude that the failure to deposit state warrants was not charged in the Information.

Neither do we agree that the evidence of the failure to deposit these state warrants falls within the "res gestae" exception. Obviously, these transactions were separate and distinct from the crimes charged insofar as they were originally charged as a separate count. These incidents are not explanatory of the main fact and were not required to give the jury a "full picture" of events. *See Williams v. State,* 634 P.2d 1311, 1313 n. 1 (Okla.Crim.App.1981). Thus, they are not admissible under the "res gestae" exception. Assuming *arguendo* these incidents fell within one of the "other crimes or acts" exceptions, this evidence was inadmissible under 12 O.S. 1981, § 2403 because the slight probative value of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, [and] misleading the jury...." *See Littlejohn v. State,* 713 P.2d 22, 24 (Okla.Crim.App.1986).

■ On one occasion, the State initiated inquiry into certain statements allegedly

made by appellant regarding her feelings for Harry Tracy, a political opponent. A witness was allowed to testify that appellant said "she would like to invite him over for supper and blow his brains out, and say he broke into her house." (Tr. 517) Defense counsel objected to this statement, and the objection was sustained. However, later, the prosecutor reiterated this inadmissible testimony by referring to appellant's dislike for Tracy in the presence of the jury, and questioning a second witness as to appellant's feelings for Tracy. Such evidence was irrelevant, as it did not tend to "make the existence of any fact ... of consequence to the determination of the action more probable or less probable...." *See* 12 O.S.1981, § 2401; *Henderson v. State*, 695 P.2d 879, 882 (Okla.Crim.App. 1985). Even if the testimony were relevant, it should have been excluded because "its probative value [was] substantially outweighed by the danger of unfair prejudice" and it was hearsay. *See* 12 O.S.1981, § 2403, 2801; *Littlejohn*, 713 P.2d at 24.

■ During the cross-examination of appellant, the prosecutor asked if appellant had reported money given to her by her cousin on her previous income tax return. Defense counsel promptly objected, but the objection was overruled. Appellant replied that she had not. She was then asked if she had made any estimated tax payments on income received during the current year, to which she replied in the negative. On appeal, the State argues "[f]ailure to claim income on income tax returns is probative of knowledge, intent and absence of mistake regarding wilful failure of a county treasurer to perform duties of her office, making false entries in a book of accounts, and embezzlement." Brief of Appellee, at 16.

Again, we disagree. Appellant's failure to report money received from her cousin is totally unrelated to her activities as county treasurer as is her failure to make estimated tax payments. This evidence did not tend to make the existence of any consequential fact more or less probable, espe-

cially in light of the fact it occurred after her resignation from office. *See* 12 O.S. 1981, § 2401. Further, the State failed to comply with the Burks notice requirement. Hence, the admission of this evidence was error.

■ The State also introduced evidence of other "bad" acts regarding threats made by appellant. Pat Gifford testified that appellant threatened to fire her if she put a political sign in her yard in support of a candidate which appellant opposed. While this act may not have constituted a crime, "there is a certain stigma attached" to the squelching of an individual's right to freedom of political expression. *See Freeman*, 767 P.2d at 1356. Thus, the State was required to comply with *Burks*, and wholly failed to do so. No notice was given of the intent to introduce such evidence. Furthermore, such evidence does not fall within any exception listed in Section 2404(B). Instead, such evidence was "a subterfuge for showing to the jury that the defendant is a person who deserves to be punished." *Turner v. State*, 629 P.2d 1263, 1265 (Okla. Crim.App.1981) (quoting *Burks*, 594 P.2d at 775).

■ The prosecutor also introduced testimony that appellant spent "at least an hour or two" each day watching television at the office during working hours. Again, no notice was given of the State's intent to use such evidence. We fail to see how such evidence was relevant to the crimes charged. *See* 12 O.S.1981, § 2401 or 2404(B). Rather, this evidence only showed that appellant acted in conformity with certain character traits. Thus it was inadmissible. *See Freeman*, 767 P.2d at 1356.

In conclusion, because the State introduced abundant "other crimes or acts" evidence which was highly inflammatory and tended only to show that appellant was a person worthy of punishment rather than showing her guilt for the crimes charged in the Information, and because such evidence was inadmissible under *Burks, Freeman,*

and the Oklahoma Evidence Code, reversal is required.

■ Next, appellant asserts that the trial judge erred in refusing to grant her request for a change of venue. The record reflects that this was a highly publicized incident which involved over thirty (30) newpaper articles and eight (8) television news stories. Both the Wagoner and Tulsa newpapers covered the incident. The Tulsa newspaper has a circulation of fifteen surrounding counties, including Wagoner county. Appellant was a newly-elected county officer, who had been recently involved in testifying before a grand jury against another elected officer. All but one of the twenty-five (25) prospective jurors had read or heard about the incident through the media. At least nine (9) of the twenty-five (25) had discussed the case with friends and family, and four (4) had expressed opinions or currently held opinions. Every prospective juror was a long-time resident of Wagoner or Tulsa County. All prospective jurors which were asked if they owned property answered in the affirmative. Two (2) prospective jurors, at least one (1) of whom served as a juror, stated they had written checks to appellant's office which were missing. When asked who the victim of this crime was, a prospective juror replied the victims were "the people of Wagoner County." Ten (10) prospective jurors, four (4) of whom served as jurors or alternate jurors, knew either the judge or witnesses testifying for the State. One prospective juror stated the incident was "all people talk about." Two (2) jurors were dismissed for cause due to bias.

Two tests are used to determine whether a defendant's due process rights have been violated based on the prior knowledge of jurors and pretrial publicity. *See Bear v. State,* 762 P.2d 950, 953 (Okla.Crim.App. 1988); *Brown v. State,* 743 P.2d 133, 136 (Okla.Crim.App.1987). First, prejudice may be presumed where the facts reveal that "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." *Murphy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975). Looking to the media accounts in this case, several of the newpaper articles stated that the responsibility for daily deposits fell solely on appellant, and that "she had a job to do and the audit indicates she didn't do it." The articles also stated that appellant was given an opportunity to explain about the missing money, but refused. Another article began by stating that appellant promised voters she would collect, invest and manage Wagoner County tax dollars, and that these promises had been broken as indicated by the audit. One television account, which was aired at least twice, interviewed a commissioner who stated that Wagoner County had a "tight budget" before this incident arose, and that he suspected the school budget would suffer from the losses. While we do not believe that these accounts rose to the level of destroying the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob," we do believe these various statements warrant consideration under the second test described below. *Id.*

The second test focuses on the entire circumstances surrounding appellant's trial to determine whether the defendant received a "fundamentally fair" trial. *See Brown,* 743 P.2d at 136, (quoting *Murphy,* 421 U.S. at 799, 95 S.Ct. at 2036). Every juror in the instant case stated that he could set aside his opinion and consider only the evidence presented at trial. However, as stated in *Murphy,* 421 U.S. at 799, 95 U.S. at 2037, a juror's statement is not determinative of this issue. After full consideration of the *voir dire,* and of the vast publicity and statements made by the media, we agree that the trial court erred in refusing to grant appellant's motion for change of venue. Appellant was tried and convicted by the citizens of Wagoner County, who were the actual victims of the crime. All but one juror had heard or read media accounts of the incident. Two pro-

spective jurors were closely involved in the alleged misconduct as their checks were missing. Although the trial judge refused to allow questioning into the area of appellant's election and the disposition of the jurors with regard to this election, it is clear from all accounts that appellant was a well-known elected official in an area where this incident was "all people talked about." These facts, considered with the other circumstances mentioned above, make clear that appellant's motion should have been granted as there was a "reasonable possibility of prejudice [arising from] wide-spread pre-trial publicity, and its possible effect on the jury panel...." *See Scott v. State*, 448 P.2d 272, 274 (Okla. Crim.App.1968).

For the reasons mentioned above, the judgment and sentences are REVERSED and REMANDED for a new trial.

BRETT, P.J., and LANE, J., concur.

BUSSEY, J., specially concurs.

LUMPKIN, J., concurs in part and dissents in part.

BUSSEY, Judge, specially concurring:

I write separately only to state my view that a change of venue is not *mandated* on REMAND. The jury selection at the second trial could reveal greatly diminished prejudicial publicity and softened community sentiment. *See Patton v. Yount*, 467 U.S. 1025, 1034, 104 S.Ct. 2885, 2890, 81 L.Ed.2d 847, 856 (1984). Furthermore, the relevant question is not whether the community remembers the case, but whether the jurors have such fixed opinions that they cannot judge impartially the guilt of the appellant. *Id.*

LUMPKIN, Judge, concurring in part, dissenting in part:

I concur with the majority that the other crimes or acts evidence introduced by the State was reversible error. I dissent to the majority's finding that the trial court erred in refusing Appellant's request for change of venue. Jurors McGee and Necessary had not heard or read media accounts of the charges against Appellant, and the remaining jurors testified that while they had either heard or read about the case, they had not discussed it with anyone and could render an impartial verdict based upon the evidence. The record reveals that the requirements of 22 O.S.1981, § 662 have been met. *See Tegeler v. State*, 9 Okl.Cr. 138, 130 P. 1164 (1913), and *Turner v. State*, 4 Okl.Cr. 164, 111 P. 988 (1910).

Nor should the fact that the citizens of Wagoner County were the "victims" of the crimes mandate a change of venue, inasmuch as the victims of all crimes committed within this state are its people and an impartial jury would never be found using that criteria. To apply the label of "victim" to the citizens of a county in the context of the majority opinion would necessitate a change of venue in any case wherein a county official is charged with crimes arising from misconduct in office. I do not believe we should establish a precedent that broad.