LUMPKIN, PRESIDING JUDGE:
 

 ¶1 Appellant, Shane Allen Vanderpool, was tried by jury and convicted of First Degree Murder (Count 1) ( 21 O.S.Supp.2012, § 701.7 ); Possession of a Firearm After Former Conviction (Count 2) ( 21 O.S.Supp.2014, § 1283 ) After Two or More Felony Convictions; and Eluding a Police Officer (misdemeanor) (Count 3) ( 21 O.S.2011, § 540A ) in District Court of Tulsa County Case Number CF-2016-1376.
 
 [1]
 
 The jury recommended as punishment imprisonment for life without the possibility of parole in Count 1, imprisonment for life in Count 2 and incarceration in the county jail for one (1) year and a $2,000.00 fine in Count 3. The trial court sentenced Appellant accordingly, ordered the sentences to run consecutively and granted Appellant credit for time served. It is from these judgments and sentences that Appellant appeals.
 

 FACTS
 

 ¶2 Appellant shot and killed Blaine Wells shortly after sunrise on February 21, 2016. The two men did not know one another. They had not interacted with each other prior to Wells' death. Instead, the shooting appeared to be an instance of mistaken identity.
 

 ¶3 Jimmy Turpin, Kayla Stites, Blaine Wells and their friend Trey had spent the night of February 20th gambling at the Osage Casino. Early the next morning the group left the casino in Stites' car. They took Trey home and returned to Stites' home in the Hampton Hills Apartments in Tulsa, Oklahoma. However, they did not remain there.
 

 ¶4 Turpin gathered some additional money he had left at the apartment and along with the remaining members of the group decided to continue gambling at the River Spirit Casino on South Riverside Drive. The trio took Stites' car. Turpin drove while Stites rode in the passenger seat. Wells was seated in the rear seat behind Turpin. As they reached the front of the apartment complex they encountered an oncoming sedan. The car was a dirty white color and had damage to the nose of the vehicle.
 

 ¶5 Turpin mistakenly believed that the oncoming vehicle contained their mutual friend, "Matt," and attempted to get a look at the driver. As Turpin navigated Stites' car out of the complex, the white car turned and followed the trio. Turpin continued to attempt to ascertain who was in the other car. He
 was so focused on looking at the driver in the rear view mirror that he missed the entrance ramp to Interstate 44. Turpin was forced to drive near the local Ford dealership to circle back to the ramp. The white sedan continued to follow Stites' vehicle. When Turpin came up to the stop sign at 51st and Indian Avenue, Turpin rolled his window down. The driver of the white car stopped his vehicle behind the trio's car and exited the sedan. He took three or four steps towards their direction.
 

 ¶6 Turpin and Stites easily observed the driver with the aid of the lights from the nearby dealership and the dawn of the sun. The driver had on a green t-shirt, he had facial hair, and was stocky. The driver's shoulder length hair was parted down the middle.
 

 ¶7 Turpin and the driver of the white car attempted to make out each other's identity, however, neither man recognized the other. Stites observed a handgun in the other man's hand and screamed for Turpin to drive away. Turpin took his foot off of the brake and started to let the car roll forward. Turpin declared: "Hey man, you got us confused with somebody else."
 
 [2]
 
 As Turpin pressed down on the accelerator, the other man fired one shot through the back window of Stites' car and into Well's head.
 

 ¶8 Turpin sped away from the intersection but stopped at a nearby QuickTrip store when Stites observed that Wells had been shot. Once Turpin stopped at the store, Stites ran inside and had the employees call 911. Although emergency workers quickly arrived, Wells succumbed to his injury at the scene. The Medical Examiner's office determined that Wells died from a single gunshot wound to his head.
 

 ¶9 The Tulsa Police Department investigated Wells' death. Detectives Joe Campbell and Matt Frazier recovered a credit card and a spent .40 Smith & Wesson casing from the intersection at 51st and Indian Avenue. When the officers cleared the owner of the credit card they learned of a feud between members of the Irish Mob and Kevin Pilon, a member of the United Aryan Brotherhood ("UAB"). After speaking with Pilon and his known female associate, "Malibu," they began investigating whether Appellant had been involved in Wells' death.
 

 ¶10 The detectives discovered that members of the Irish Mob hung out and sold drugs out of Lynsi Mayfield's apartment. Mayfield lived with two other women in the Rivera West complex which was adjacent to Stites' apartment complex. Appellant was known to frequent Mayfield's apartment. He drove a white Nissan Altima that matched Turpin's and Stites' descriptions of the suspect's vehicle. Frazier secured a search warrant for Appellant's cell phone records and discovered that Appellant's cell phone was in the vicinity of 51st and Indian Avenue at the time of the shooting. He had placed and received phone calls from Lynsi Mayfield's number prior to the shooting of Wells.
 

 ¶11 The detectives conducted surveillance on Mayfield's apartment. On March 3, 2016, Detective Justin Ritter saw Appellant enter a car and drive off. Patrol Officer Cole Butler moved to take Appellant into custody on outstanding warrants. Butler maneuvered his marked patrol unit behind Appellant's vehicle but did not engage the lights or the siren. Appellant drove into a nearby parking lot, stopped and opened his door. After Butler stopped his unit, Appellant took off in the car. Butler engaged his lights and siren but Appellant refused to stop. Traveling at excessive speeds through neighborhood areas, Appellant lost Butler. The officers saturated the area. Detective Frazier located Appellant walking in a nearby neighborhood talking on his cell phone. Appellant fled from the officers into the backyard of a residence but was taken into custody with his phone.
 

 ¶12 Frazier secured a search warrant for Appellant's phone. Detective Nate Schilling performed a forensic examination of the device. He found numerous photographs depicting Appellant. Several of the photos documented Appellant undergoing a haircut in a green t-shirt the night before the shooting. The photos also showed that Appellant had shoulder length hair parted in the middle and facial hair after the haircut. Other photographs
 showed Appellant holding firearms including a handgun. Some of the photographs depicted Appellant displaying gang signs, posing with other individuals, and exhibiting cash, firearms, and articles of green clothing.
 

 ¶13 The officers also found several different screen shots saved to Appellant's phone. One screen shot contained the link to the News On 6 story about the shooting of Blaine Wells. Another screen shot depicted Pilon's Facebook Profile photographs. A third screen shot contained Pilon's mug shot from the county jail.
 

 ¶14 The phone also contained several text messages to Mayfield about Pilon. Early in the morning on February 21st, Appellant had exchanged texts with Mayfield about Pilon's location.
 

 ¶15 Detective Frazier prepared photographic lineups for both Turpin's and Stites' review. Both identified Appellant as the individual who had shot Blaine Wells.
 

 ¶16 Detective Ritter executed a search warrant on Mayfield's apartment. Ritter found a green t-shirt matching the shirt that Appellant was wearing in the haircut photos discovered on his cell phone. Ritter also found Kendra Fisher staying at Mayfield's apartment.
 

 ¶17 Both Stites and Turpin identified Appellant at trial as the individual who shot Wells. Fisher also testified against Appellant and indicated that she had met Appellant through the Irish Mob. Fisher had spent the weekend of February 20th in a hotel room which Appellant had secured for her. Appellant spent the night with Fisher on the 19th. He left her alone on the 20th while he went to a gun range. Appellant woke Fisher very early in the morning on the 21st and demanded that she come with him. Before they left, Appellant received a phone call and stepped into the bathroom to speak with the caller. Afterwards, Appellant declared "I got shit to do. I'm leaving."
 
 [3]
 
 Appellant left and did not return to the hotel. Fisher called Appellant on his cell phone later that morning. Appellant stated that he needed to figure out something to do with his car. When Fisher asked Appellant what was wrong with the car, he advised her he would call her back. Appellant then sent Fisher a text message containing a link to the News On 6 article relating that Blaine Wells had been shot.
 

 ¶18 Fisher met up with Appellant a few days later and travelled with him to Oklahoma City. During this trip, Appellant confessed to his involvement in the shooting. He related that he drove his car around the car lot as their car was pulling out of the apartments. Appellant advised Fisher that when the car stopped at a stop sign he got out of his car with the gun. He walked up to the back of the car, shot through the back window, got back in his car and drove off. Appellant explained to Fisher that some of the UAB members had gone to Mayfield's apartment and ran in on them and that he was trying to defend the girls in the apartment.
 

 DISCUSSION
 

 I.
 

 ¶19 In his first proposition of error, Appellant contends that the trial court erred when it admitted bad character evidence. He asserts that the evidence concerning his affiliation with the Irish Mob denied him due process and a fair trial.
 

 ¶20 Prior to trial the State filed a notice of its intent to introduce the challenged evidence as required by
 
 Burks v. State
 
 ,
 
 1979 OK CR 10
 
 , ¶ 12,
 
 594 P.2d 771
 
 , 774, overruled on other grounds
 
 by
 

 Jones v. State
 
 ,
 
 1989 OK CR 7
 
 , ¶ 8,
 
 772 P.2d 922
 
 , 925. The State alleged that the evidence was part of the
 
 res gestae
 
 of the offense or, in the alternative, the evidence constituted other crimes evidence admissible for the limited purpose of proving motive, intent, and identity pursuant to 12 O.S.2011, § 2404(B). Appellant objected to the admission of the evidence. The trial court held a hearing and found that the evidence was admissible as both part of the
 
 res gestae
 
 and pursuant to § 2404(B).
 

 ¶21 Appellant did not object to the admission of the challenged evidence at trial.
 

 He concedes that he waived appellate review of this claim for all but plain error when he failed to renew his pretrial challenge to the evidence.
 
 See
 

 Cheatham v. State
 
 ,
 
 1995 OK CR 32
 
 , ¶ 48,
 
 900 P.2d 414
 
 , 427 (finding issue waived despite pretrial challenge where appellant failed to renew objection at time evidence was actually offered at trial). Therefore, we review Appellant's claim pursuant to the test for plain error set forth in
 
 Simpson v. State
 
 ,
 
 1994 OK CR 40
 
 ,
 
 876 P.2d 690
 
 .
 
 Baird v. State
 
 ,
 
 2017 OK CR 16
 
 , ¶ 25,
 
 400 P.3d 875
 
 , 883. Under this test, an appellant must show an actual error, which is plain or obvious, and which affects his substantial rights.
 

 Id.
 

 This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice.
 

 Id.
 

 ¶22 Section 2404(B) of the Oklahoma Evidence Code prohibits the introduction of other crimes, wrongs, or acts to prove the character of a person. "The basic law is well established-when one is put on trial, one is to be convicted-if at all-by evidence which shows one guilty of the offense charged; and proof that one is guilty of other offenses not connected with that for which one is on trial must be excluded."
 
 Lott v. State
 
 ,
 
 2004 OK CR 27
 
 , ¶ 40,
 
 98 P.3d 318
 
 , 334.
 

 ¶23 This Court has recognized that gang involvement or affiliation does not constitute impermissible other crimes evidence because it is not a crime to be a gang member.
 
 Robinson v. State
 
 ,
 
 1995 OK CR 25
 
 , ¶ 49,
 
 900 P.2d 389
 
 , 403. Nonetheless, an act that is not a violation of the criminal law is governed by § 2404(B) where it carries a stigma that could unduly prejudice an accused in the eyes of the jury.
 
 Eizember v. State
 
 ,
 
 2007 OK CR 29
 
 , ¶ 75,
 
 164 P.3d 208
 
 , 230 ;
 
 Freeman v. State
 
 ,
 
 1988 OK CR 192
 
 , ¶ 3,
 
 767 P.2d 1354
 
 , 1355.
 

 ¶24 If a defendant's conduct is part of the
 
 res gestae
 
 of the charged offense, then it is not considered other crimes or bad acts evidence.
 
 Rogers v. State
 
 ,
 
 1995 OK CR 8
 
 , ¶¶ 20-21,
 
 890 P.2d 959
 
 , 971. Evidence is considered part of the
 
 res gestae
 
 when: a) it is so closely connected to the charged offense as to form part of the entire transaction; b) it is necessary to give the jury a complete understanding of the crime; or c) when it is central to the chain of events.
 
 Jackson v. State
 
 ,
 
 2006 OK CR 45
 
 , ¶ 28,
 
 146 P.3d 1149
 
 , 1160. "
 
 Res gestae
 
 are those things, events, and circumstances incidental to and surrounding a larger event that help explain it."
 
 McElmurry v. State
 
 ,
 
 2002 OK CR 40
 
 , ¶ 63,
 
 60 P.3d 4
 
 , 22. This Court has found that evidence of gang involvement or affiliation may be admitted when it is "fundamental to understanding what happened and why it happened."
 
 Thompson v. State
 
 ,
 
 2007 OK CR 38
 
 , ¶ 34,
 
 169 P.3d 1198
 
 , 1209.
 

 ¶25 Reviewing the record, we find that Appellant has not shown the existence of an actual error. Appellant's affiliation with the Irish Mob was so closely connected to the charged offenses as to form part of the entire transaction and was central to the chain of events. The evidence was also necessary to give the jury a complete understanding of the crime,
 
 i.e.
 
 , what happened and why it happened. The evidence at trial showed that Appellant's sole purpose for being in the area near the apartment complexes that morning was to protect Lynsi Mayfield and the other women affiliated with the Irish Mob from members of the United Aryan Brotherhood. Appellant gave this explanation when he later confessed to Kendra Fisher. The evidence recovered from Appellant's cell phone showed that he was focused on known UAB member, Kevin Pilon, and had texted Mayfield concerning Pilon's location the morning of the shooting. Wholly intending to spend time with Fisher, Appellant left her side upon receipt of a phone call from Mayfield. As he left he declared "I got shit to do." Appellant, dressed in the green color affiliated with the Irish Mob, followed Turpin, Stites, and Wells.
 

 ¶26 The photographs of Appellant holding firearms including a handgun were clearly part of the
 
 res gestae
 
 of Count 2. (State's Exhibit Numbers 74 & 76). Although the record does not establish whether the depicted handgun was a .40 S & W caliber, the photographs tended to establish that Appellant possessed a firearm after former conviction of a felony.
 

 ¶27 We note that the challenged evidence also tended to establish Appellant's motive, intent, and identity. It is apparent from the record that Appellant mistook Turpin's actions and shot Wells under the misapprehension that they were members of the rival United Aryan Brotherhood. Therefore, the evidence was also admissible under the other crimes and bad acts exception found within 12 O.S.2011, § 2404(B).
 
 See
 

 Douglas v. State
 
 ,
 
 1997 OK CR 79
 
 , ¶¶ 72-73,
 
 951 P.2d 651
 
 , 673 (finding evidence of gang involvement may be admitted if it fits within one of the exceptions set forth in § 2404(B) ), overruled on other grounds by
 
 Nicholson v. State
 
 ,
 
 2018 OK CR 10
 
 , ¶ 12,
 
 421 P.3d 890
 
 , 895.
 

 ¶28 Appellant argues that no admissible evidence established the gang rivalry theory. We are not persuaded by this argument. The very evidence that Appellant challenges within this proposition tends to establish this circumstance. Kendra Fisher testified that she met Appellant through the Irish Mob and frequented Mayfield's apartment. She related Appellant's confession to shooting Wells and his explanation that he was trying to protect the girls at the apartment from UAB members. The photographs of Appellant displaying gang signs, posing with other individuals, and exhibiting cash, firearms, and articles of green clothing tended to establish Appellant's involvement in the Irish Mob and corroborated Fisher's testimony concerning Appellant's confession. (State's Exhibit Numbers 74-78). The messages Appellant exchanged with Mayfield concerning Pilon's location and the images of Pilon retrieved from Appellant's cell phone also tended to establish Appellant's motive,
 
 i.e
 
 ., a gang rivalry gone wrong situation. Based upon this record, we conclude that Appellant has not shown that error, plain or otherwise, occurred. Proposition One is denied.
 

 II.
 

 ¶29 In his second proposition of error, Appellant challenges the admission of several photographs. He argues that the images violated his rights to due process and a fair trial.
 

 ¶30 Appellant first challenges the trial court's admission of the photograph introduced as State's Exhibit Number 3. He asserts that the photograph was gruesome and highly prejudicial.
 

 ¶31 State's Exhibit Number 3 depicted Kayla Stites' car parked haphazardly in a parking spot at the QuikTrip convenience store. Wells' body had been removed from the scene but blood and gore remained on the ground where Wells' body had been removed from the car. Appellant objected to the admission of the exhibit. The trial court found that the photograph had significant probative value that outweighed its potential for prejudice.
 

 ¶32 The admissibility of photographic evidence, as with all evidence, is reviewed under an abuse of discretion standard.
 
 Davis v. State
 
 ,
 
 2011 OK CR 29
 
 , ¶ 86,
 
 268 P.3d 86
 
 , 113. An abuse of discretion has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented or, stated otherwise, any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue.
 
 Neloms v. State
 
 ,
 
 2012 OK CR 7
 
 , ¶ 35,
 
 274 P.3d 161
 
 , 170.
 

 ¶33 Reviewing the record in the present case, we find that the trial court did not abuse its discretion when it admitted State's Exhibit Number 3. "The issue of gruesome photographs has been discussed by this Court in case after case, and the issues relating thereto are well known."
 
 Cole v. State
 
 ,
 
 2007 OK CR 27
 
 , ¶ 29,
 
 164 P.3d 1089
 
 , 1096. " 'Gruesome crimes result in gruesome pictures.' "
 

 Id.
 

 ; quoting
 
 Patton v. State
 
 ,
 
 1998 OK CR 66
 
 , ¶ 60,
 
 973 P.2d 270
 
 , 290. "Photographs are admissible if their content is relevant and their probative value is not substantially outweighed by their prejudicial effect."
 
 Davis
 
 ,
 
 2011 OK CR 29
 
 , ¶ 86,
 
 268 P.3d at
 
 113 ;
 
 Bernay v. State
 
 ,
 
 1999 OK CR 37
 
 , ¶ 18,
 
 989 P.2d 998
 
 , 1007. Relevant evidence is defined as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011, § 2401. "The
 probative value of photographs of murder victims can be manifested in numerous ways, including showing the nature, extent and location of wounds, establishing the
 
 corpus delicti
 
 , depicting the crime scene, and corroborating the medical examiner's testimony."
 
 Davis
 
 ,
 
 2011 OK CR 29
 
 , ¶ 86,
 
 268 P.3d at 113
 
 .
 

 ¶34 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2011, § 2403. "When measuring the relevancy of evidence against its prejudicial effect, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."
 
 Mitchell v. State
 
 ,
 
 2010 OK CR 14
 
 , ¶ 71,
 
 235 P.3d 640
 
 , 657.
 

 ¶35 The trial court's determination that State's Exhibit Number 3 held significant probative value that outweighed its potential for prejudice was not clearly against the weight and effect of the facts presented. The image depicted part of the crime scene, tended to establish Wells' death, and corroborated the testimony of Turpin, Stites, the investigating officers, and the medical examiner. Although the photograph showed blood and gore, it does not approach the photographs which this Court has previously determined as extremely grotesque.
 
 See
 

 Cole
 
 ,
 
 2007 OK CR 27
 
 , ¶ 30, 164 P.3d at 1096 (finding autopsy photographs depicting helpless child after grown man broke her in half "extremely grotesque, the sort of pictures that we would all like to avoid in our lives."). Giving the photograph its maximum reasonable probative force and its minimum reasonable prejudicial value we find that the photograph's probative value was not substantially outweighed by it potential for prejudice.
 

 ¶36 Second, Appellant challenges the trial court's admission of the photographs introduced as State's Exhibit Numbers 74, 76, 77 and 78. He asserts that the photographs lacked relevance and were highly prejudicial.
 

 ¶37 Appellant concedes that he waived appellate review of this claim for all but plain error when he failed to object to the introduction of the photographs at trial. Therefore, we review his claim pursuant to the test for plain error set out above and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights.
 
 Baird
 
 ,
 
 2017 OK CR 16
 
 , ¶ 25,
 
 400 P.3d at 883
 
 .
 

 ¶38 Reviewing the record, we find that Appellant has not shown the existence of an actual error. State's Exhibit Number 74 depicted Appellant without a shirt displaying a multitude of tattoos, gesturing a gang sign with his right hand, and holding a semi-automatic handgun in his left hand. State's Exhibit Number 76 depicted Appellant and four other individuals wearing green articles of clothing, exhibiting gang signs and brandishing firearms. State's Exhibit Numbers 77 and 78 depict staged photographs of the guns exhibited in State's Exhibit Number 76 on a bed. The guns are surrounded by green articles of clothing, knives, brass knuckles, money, and, presumably, bags of drugs. These photographs were probative of issues in the case. All of the photographs were recovered from Appellant's phone. As discussed in Proposition One, State's Exhibit Numbers 74-78 tended to establish Appellant's involvement with the Irish Mob, corroborated Fisher's testimony concerning Appellant's confession, and established Appellant's identity, motive, and intent in the shooting of Wells. Giving the photographs their maximum reasonable probative force and their minimum reasonable prejudicial value we find that the photographs' probative value was not substantially outweighed by their potential for prejudice. As such, we find that Appellant has not shown that plain error occurred.
 

 ¶39 Within this proposition of error, Appellant also references the prosecutor's comments in closing argument and cites to
 
 Darden v. Wainwright
 
 ,
 
 477 U.S. 168
 
 , 181,
 
 106 S.Ct. 2464
 
 , 2471,
 
 91 L.Ed.2d 144
 
 (1986). To the extent that Appellant's argument could be interpreted as raising a claim of prosecutorial misconduct, we find that the claim has not been properly presented to this Court. As Appellant has failed to set the claim out as a separate proposition of error as required by Rule 3.5,
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22,
 Ch. 18, App. (2018), we find that he has waived appellate review of this issue.
 
 Murphy v. State
 
 ,
 
 2012 OK CR 8
 
 , ¶ 23,
 
 281 P.3d 1283
 
 , 1291. Proposition Two is denied.
 

 III.
 

 ¶40 In his third proposition of error, Appellant contends that 21 O.S.Supp.2013 § 701.10-1 is unconstitutional. This Court reviews constitutional challenges to the face of a statute under a
 
 de novo
 
 standard of review.
 
 Weeks v. State
 
 ,
 
 2015 OK CR 16
 
 , ¶ 16,
 
 362 P.3d 650
 
 , 654 (performing
 
 de novo
 
 review where statute challenged on its face as opposed to an as applied challenge). However, Appellant does not challenge the statute on its face. Instead he argues that the statute is unconstitutional as applied and asserts that noncapital murder defendants should be permitted to introduce evidence in mitigation of punishment because the State is permitted to introduce evidence of any prior felony convictions. Since Appellant neither sought to introduce evidence in mitigation of punishment nor raised the challenge that he now raises on appeal, we find that he has waived appellate review of his claim for all but plain error.
 
 Baird
 
 ,
 
 2017 OK CR 16
 
 , ¶ 25,
 
 400 P.3d at
 
 883 ;
 
 Martinez v. State
 
 ,
 
 2016 OK CR 3
 
 , ¶ 64,
 
 371 P.3d 1100
 
 , 1115,
 
 cert. denied
 
 ,
 
 Martinez v. Oklahoma
 
 , --- U.S. ----,
 
 137 S.Ct. 386
 
 ,
 
 196 L.Ed.2d 304
 
 (2016) ;
 
 Simpson v. State
 
 ,
 
 2010 OK CR 6
 
 , ¶ 46,
 
 230 P.3d 888
 
 , 904. Thus, we review his claim under the test for plain error set forth above and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights.
 
 Baird
 
 ,
 
 2017 OK CR 16
 
 , ¶ 25,
 
 400 P.3d at 883
 

 ¶41 In the present case, Appellant has not shown the existence of an actual error. We note that the party attacking the constitutionality of a statute has the burden of proving that the statute is unconstitutional.
 
 Murphy v. State
 
 ,
 
 2012 OK CR 8
 
 , ¶ 32,
 
 281 P.3d 1283
 
 , 1292.
 

 Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution. Statutes are to be liberally construed with a view to effect their objects and to promote justice. The constitutionality of a statute will be upheld unless it is clearly, palpably, and plainly inconsistent with fundamental law.
 

 Id.
 

 (quotation and citations omitted).
 

 ¶42 Section 701.10-1 provides:
 

 A. Upon conviction or adjudication of guilt of a defendant of murder in the first degree, wherein the state is not seeking the death penalty but has alleged that the defendant has prior felony convictions, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to life imprisonment without parole or life imprisonment, wherein the state shall be given the opportunity to prove any prior felony convictions beyond a reasonable doubt. The proceeding shall be conducted by the trial judge before the same trial jury as soon as practicable without presentence investigation.
 

 B. If the trial jury has been waived by the defendant and the state, or if the defendant pleaded guilty or nolo contendere, the sentencing proceeding shall be conducted before the court.
 

 As Appellant suggests, the challenged statute does not make any provision for the admission of mitigating evidence but clearly provides for the State's admission of a criminal defendant's prior felony convictions in any prosecution for murder in the first degree wherein the state is not seeking the death penalty but has alleged that the defendant has prior felony convictions.
 

 ¶43 Appellant asserts that this circumstance violates his fundamental right to due process. Oklahoma's Due Process provisions are the same as those found in the Federal Constitution.
 
 Horn v. State
 
 ,
 
 2009 OK CR 7
 
 , ¶ 14,
 
 204 P.3d 777
 
 , 781. "In the field of criminal law, we have defined the category of infractions that violate fundamental fairness very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."
 
 Medina v. California
 
 ,
 
 505 U.S. 437
 
 , 443,
 
 112 S.Ct. 2572
 
 , 2576,
 
 120 L.Ed.2d 353
 
 (1992) (quotations and citations
 omitted). A criminal procedure statute only runs afoul of the Due Process Clause when " 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' "
 

 Id.
 

 ,
 
 505 U.S. at 445
 
 ,
 
 112 S.Ct. at 2577
 
 (quoting
 
 Patterson v. New York
 
 ,
 
 432 U.S. 197
 
 , 202,
 
 97 S.Ct. 2319
 
 , 2322,
 
 53 L.Ed.2d 281
 
 (1977) ).
 

 ¶44 Examining the procedure set out in Section 701.10-1 under this analysis, we find that it satisfies the fundamental requirements of due process. There is no violation of the Eighth Amendment, the Equal Protection Clause, or the Due Process Clause when a trial court does not consider mitigating factors during a noncapital sentencing proceeding.
 
 Applegate v. State
 
 ,
 
 1995 OK CR 49
 
 , ¶¶ 19-20,
 
 904 P.2d 130
 
 , 137 ;
 
 Scrivner v. Tansy
 
 ,
 
 68 F.3d 1234
 
 , 1240 (10th Cir. 1995). Instead, an individualized sentencing procedure wherein the defendant is permitted to present evidence in mitigation of punishment is only required in two circumstances. Cases involving the death penalty require such a proceeding.
 
 Harmelin v. Michigan
 
 ,
 
 501 U.S. 957
 
 , 995-96,
 
 111 S.Ct. 2680
 
 , 2701-02,
 
 115 L.Ed.2d 836
 
 (1991). In addition, an individualized sentencing hearing is required when the State seeks a sentence of life without the possibility of parole for a juvenile offender.
 
 Stevens v. State
 
 ,
 
 2018 OK CR 11
 
 , ¶ 22,
 
 422 P.3d 741
 
 , 747.
 

 ¶45 The Oklahoma Legislature has not provided for an individualized sentencing hearing in noncapital cases.
 
 Ashton v. State
 
 ,
 
 2017 OK CR 15
 
 , ¶ 53,
 
 400 P.3d 887
 
 , 900, overruled on other grounds by
 
 Williamson v. State
 
 ,
 
 2018 OK CR 15
 
 ,
 
 422 P.3d 752
 
 ;
 
 Malone v. State
 
 ,
 
 2002 OK CR 34
 
 , ¶¶ 5-7,
 
 58 P.3d 208
 
 , 209-10. However, it has determined that the circumstance of prior felony convictions is relevant to the sentencing decision in a noncapital first degree murder trial. The United States Supreme Court has determined that state legislatures remain free to decide what evidence is relevant and admissible at sentencing in noncapital cases.
 
 Lockett v. Ohio
 
 ,
 
 438 U.S. 586
 
 , 603-04,
 
 98 S.Ct. 2954
 
 , 2964,
 
 57 L.Ed.2d 973
 
 (1978). Therefore the Oklahoma Legislature was well within its rights when it amended § 701.10-1 to allow for the admission of evidence of prior felony convictions in the sentencing stage of a noncapital first degree murder trial.
 

 ¶46 Although Section 701.10-1 does not permit a defendant to present mitigating evidence in the sentencing stage of the trial, the statute does not run afoul of the premise that both parties have an equal opportunity to introduce relevant evidence. This Court has long recognized that a defendant may present evidence that challenges the existence or validity of an alleged prior felony conviction.
 
 See
 

 Roney v. State
 
 ,
 
 1991 OK CR 114
 
 , ¶ 10,
 
 819 P.2d 286
 
 , 288 ("[W]hen the State makes a prima facie showing of prior convictions, the defendant has the burden of showing defects in that judgment and sentence.");
 
 Rosteck v. State
 
 ,
 
 1988 OK CR 11
 
 , ¶ 7,
 
 749 P.2d 556
 
 , 558 (same);
 
 Mitchell v. State
 
 ,
 
 1983 OK CR 25
 
 , ¶ 11,
 
 659 P.2d 366
 
 , 369 (once State produces prima facie evidence of identity, the burden of producing evidence to rebut the prima facie evidence shifts to the defense but the ultimate burden of proof remains on the State);
 
 Welliver v. State
 
 ,
 
 1980 OK CR 101
 
 , ¶ 12,
 
 620 P.2d 438
 
 , 440 (same);
 
 Conner v. State
 
 ,
 
 1974 OK CR 25
 
 , ¶ 3,
 
 518 P.2d 1271
 
 , 1272 (same);
 
 Williams v. State
 
 ,
 
 1961 OK CR 70
 
 , ¶ 7,
 
 364 P.2d 702
 
 , 704 (same). Since Section 701.10-1 permits the defense the opportunity to present evidence to defend against the State's evidence of prior convictions in the sentencing stage of the trial, it meets the fundamental requirements of due process. The statute is undoubtedly constitutional.
 

 ¶47 We note that the Oklahoma Legislature has provided for the introduction of comprehensive information about a criminal defendant at a later stage of the case. After the discharge of the jury, the trial court is free to consider the presentence investigation report provided for in 22 O.S.Supp.2017, § 982 at the formal sentencing hearing. This report generally includes information about the defendant's "age, marital status, living arrangements, financial obligations, income, family history and education ... social history, indications of a predisposition to violence or substance abuse, remorse or guilt about the offense or the harm to the victim, job skills and employment history."
 

 Id.
 

 ¶48 Turning to the present case, we find that Appellant was not deprived of his fundamental rights to due process.
 
 See
 

 Horn
 
 ,
 
 2009 OK CR 7
 
 , ¶ 21,
 
 204 P.3d at 783
 
 (holding essential requirements of due process are notice and opportunity to be heard). The State provided Appellant with notice in the present case when it alleged the prior felony convictions in the Supplemental Information. He was afforded the opportunity to challenge the State's evidence as to his prior felony convictions during the sentencing stage of the trial.
 
 [4]
 
 As such, we find that Appellant has not shown that error, plain or otherwise, occurred. Proposition Three is denied.
 

 IV.
 

 ¶49 In his fourth proposition of error, Appellant challenges the effectiveness of defense counsel. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 (1984).
 
 Malone v. State
 
 ,
 
 2013 OK CR 1
 
 , ¶ 14,
 
 293 P.3d 198
 
 , 206. The
 
 Strickland
 
 test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense.
 

 Id.
 

 ¶50 The Court begins its analysis with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 . Appellant must overcome this presumption and demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy.
 

 Id.
 

 ¶51 When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed.
 
 Malone
 
 ,
 
 2013 OK CR 1
 
 , ¶ 16,
 
 293 P.3d at 207
 
 . To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors.
 

 Id.
 

 "The likelihood of a different result must be substantial, not just conceivable."
 
 Harrington v. Richter
 
 ,
 
 562 U.S. 86
 
 , 112,
 
 131 S.Ct. 770
 
 , 792,
 
 178 L.Ed.2d 624
 
 (2011).
 

 ¶52 Appellant asserts that defense counsel was ineffective for failing to object and raise the challenges that he now raises in Propositions One and Two. We determined in those propositions that plain error had not occurred. We note that Appellant confessed to shooting Wells and that Appellant had thirteen prior felony convictions. Based upon the record, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to raise the challenges now raised on appeal.
 
 Ashton
 
 ,
 
 2017 OK CR 15
 
 , ¶¶ 58-59, 400 P.3d at 901 ;
 
 Glossip v. State
 
 ,
 
 2007 OK CR 12
 
 , ¶¶ 112-13,
 
 157 P.3d 143
 
 , 161. Proposition Four is denied.
 

 V.
 

 ¶53 In his fifth proposition of error, Appellant claims the combined errors in his trial denied him the right to a constitutionally guaranteed fair trial. When there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial.
 
 Bechtel v. State
 
 ,
 
 1987 OK CR 126
 
 , ¶ 12,
 
 738 P.2d 559
 
 , 561. However, a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by the appellant.
 
 Engles v. State
 
 ,
 
 2015 OK CR 17
 
 , ¶ 13,
 
 366 P.3d 311
 
 , 315 ;
 
 Williams v. State
 
 ,
 
 2001 OK CR 9
 
 , ¶ 127,
 
 22 P.3d 702
 
 , 732. We have not identified any error during the course of the trial in the present case. Therefore, no new trial or modification of sentence is warranted and this assignment of error is denied.
 

 DECISION
 

 ¶54 The Judgment and Sentence of the District Court is hereby
 
 AFFIRMED.
 
 Pursuant
 to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2018), the
 
 MANDATE
 
 is
 
 ORDERED
 
 issued upon the delivery and filing of this decision.
 

 LEWIS, V.P.J.: Concur
 

 HUDSON, J.: Concur
 

 KUEHN, J.: Concur
 

 ROWLAND, J.: Concur
 

 The trial court sustained Appellant's demur to Count 4, Resisting an Officer (21 O.S.2011, § 268 ).
 

 Tr. 332.
 

 Tr. 385.
 

 Appellant's trial in the present case was trifurcated. The jury determined the issue of guilt as to Counts One and Three in the first stage, the issue of guilt as to Count Two in the second stage, and the issue of punishment in the third stage.